UNITED STATES of America, Appellee,

v.

341.45 ACRES OF LAND, MORE OR LESS, LOCATED IN the COUNTY OF ST. LOUIS, STATE OF MINNESOTA, Edward M. Essling, et al., Appellants.

Tract Nos. 03–117, 60–117, 60–122.

UNITED STATES of America, Appellee,

v.

21.90 ACRES OF LAND, MORE OR LESS, LOCATED IN the COUNTY OF KOOCHICHING, STATE OF MINNESOTA, Iona M. Dobis, et al., Appellants.

Tract No. 69–114.

UNITED STATES of America, Appellee,

v.

234.55 ACRES OF LAND, MORE OR LESS, SITUATE IN UNION COUNTY, STATE OF ARKANSAS, et al., and Unknown Owners

Salmar Oil Corporation, Appellant.

Tract No. 303.

Nos. 82–1919, 83–1519.

United States Court of Appeals, Eighth Circuit.

Submitted May 16, 1983.

Decided Dec. 28, 1984.

John R. Gibson, Circuit Judge, dissented with opinion.

Robert V. Light, Little Rock, Ark., for appellant Salmar Oil Corp.

David Essling, St. Paul, Minn., for appellants.

James M. Rosenbaum, U.S. Atty., Donald F. Paar, Asst. U.S. Atty., Minneapolis, Minn., Robert L. Klarquist, Thomas H. Pacheco, Attys., Dept. of Justice, Washington, D.C., W. Asa Hutchinson, U.S. Atty., J. Michael Fitzhugh, Asst. U.S. Atty., Fort Smith, Ark., Carol E. Dinkins, Asst. Atty. Gen., Raymond N. Zagone, Robert L. Klarquist, Virginia P. Butler, Attys., Dept. of Justice, Washington, D.C., for appellee.

Before McMILLIAN, JOHN R. GIBSON and FAGG, Circuit Judges.

McMILLIAN, Circuit Judge.

These cases have been consolidated for purposes of appeal. In each case the district court denied the property owner's motion for costs, attorney's fees and expenses incurred in connection with the litigation of a condemnation action under the Equal Access to Justice Act (hereinafter the Act or the EAJA), 28 U.S.C. § 2412 (Supp. V 1981). In each case the district court held that the Act did not apply to condemnation actions and denied the motions. For reversal appellants in each case argue that the Act does apply to condemnation actions and that the position of the United States was not substantially justified. For the reasons discussed below, we affirm the orders of the district court.

*No. 82–1919*

In June 1977 and March 1978, the United States filed in the District Court[1] for the District of Minnesota complaints in condemnation[2] to acquire the fee title to certain lands located in the northern part of Minnesota for the Voyageurs National Park. Included in these lands were the Bassett tract (consisting of approximately 60 acres of land and including a 1.5 acre

---

1. The Honorable Miles W. Lord, Chief Judge, United States District Court for the District of Minnesota.

2. The United States filed only complaints in condemnation in these cases. No monies were deposited with the district court. As noted in the text, the property to be taken is valued as of the time of trial or, as in the present case, the time of the second trial. In comparison, under the Declaration of Taking Act, 40 U.S.C. § 258a (1976), the government initiates condemnation proceedings by filing a complaint in condemnation and declaration of taking and depositing a sum of money estimated to be just compensation for the property taken, at which time the title to the property vests in the United States and the right to an award of just compensation vests in the property owner, and the property taken is valued. When the government files only a complaint in condemnation, the title to the property vests in the United States upon payment of the award of just compensation into the district court. *See United States v. 341.45 Acres of Land,* 542 F.Supp. 482, 483 n. 1 (D.Minn.1982) (order denying property owners' motion for costs, attorney's fees and litigation expenses; on appeal herein).

island), the Essling tract (approximately 23.75 acres), and the Dobis tract (approximately 21.9 acres). Based upon its appraisers' valuations in 1977, the government offered the property owners $34,000 for the Bassett tract, $6,000 for the Essling tract, and $2,200 for the Dobis tract.

The property owners were not satisfied with the government's offers and the Bassett and Essling cases proceeded to trial in October 1979. The government's expert witness testified that the Bassett tract was worth $76,000; the property owner's expert witnesses testified that the tract was worth between $275,000 and $300,000. With respect to the Essling tract, the government's expert witness testified that it was worth $16,500; the property owner's expert witness valued it at $81,000. The jury verdict for the Bassett tract was $232,480 and for the Essling tract $56,100. The government appealed these judgments, arguing that the district court erroneously permitted the jury to consider evidence that the highest and best use of the property taken was for residential subdivisions and condominiums. This court agreed and remanded for new trial. *United States v. 341.45 Acres of Land,* 633 F.2d 108, 111–13 (8th Cir.1980), *cert. denied,* 451 U.S. 938, 101 S.Ct. 2017, 68 L.Ed.2d 324 (1981).

The question of just compensation for the Bassett and Essling tracts was retried with the Dobis tract case in 1981. The government's expert witnesses valued the Bassett tract at $118,000, the Essling tract at $18,500, and the Dobis tract at $16,900. The property owners' expert witnesses testified that the land was worth considerably more than the government's estimates and valued the Bassett tract at $244,000–$300,000, the Essling tract at $62,000–$84,000, and the Dobis tract at $40,000–$44,000. The jury awarded $204,500 for the Bassett tract, $36,400 for the Essling tract, and $25,500 for the Dobis tract. Except for small amounts withheld from the Bassett and Essling awards to pay real estate taxes, the government in March 1982 paid the property owners the amounts awarded by the jury.

Counsel for the property owners then filed a motion for costs, attorney's fees and expenses incurred in connection with the litigation of the condemnation actions under the Act, 28 U.S.C. § 2412, seeking a total amount of $98,744.76. In the affidavit filed in support of the motion, counsel included a statement made by a National Park Service land acquisition officer at a public meeting in Voyageurs National Park in August 1977:

> My job is to acquire this land for the National Park Service. I hope to acquire it for about 30 [cents] on the dollar. If the landowners cannot accept our reasonable offers, we let the matter ride for a few years. Then if necessary, we go to Court, including trials and appeals. This procedure is very expensive for the landowners. If we cannot agree on our terms, the landowners can hire lawyers at one-third [referring to contingency fee arrangements] and pay the court costs in addition. All of this takes some several years.

Counsel also noted in the affidavit that he attempted to settle the claims, offering before trial to settle the Bassett tract claim for $191,000 and the Dobis tract claim for $21,000 and to negotiate on the Essling tract claim, but never received any response from the government.

The district court held that the property owners could not recover costs against the government in connection with these condemnation actions under 28 U.S.C. § 2412(a) (formerly 28 U.S.C. § 2412); that the property owners could not recover attorney's fees and litigation expenses against the government under the EAJA, 28 U.S.C. § 2412(d)(1)(A), (B), because the Act does not apply to condemnation cases; and that the property owners could not recover attorney's fees against the government under another provision of the EAJA, 28 U.S.C. § 2412(b), because the property owners had not shown bad faith. *United States v. 341.45 Acres of Land,* 542 F.Supp. 482, 484–87 (D.Minn.1982) (order). Although the district court denied the property owners any relief, the district court

was nonetheless sympathetic to the property owners' position because they had "introduced evidence indicating that the Interior Department purposely bids in at an artificially low dollar amount and if the land owner becomes recalcitrant, the Department makes things expensive by delaying matters and then litigating to the hilt." *Id.* at 486 (footnote omitted). This appeal followed.

*No. 83–1519*

In November 1978, the government filed a complaint in condemnation and declaration in taking and deposited the estimated amount of just compensation in the District Court [3] for the Western District of Arkansas to acquire certain lands in connection with the Felsenthal Wildlife Refuge. Included in the property subject to condemnation were any mineral interests except for oil and gas; oil and gas interests were declared subordinate to the government's right to flood the land in operating the Felsenthal Wildlife Refuge. Salmar Oil Corp. (Salmar) owned 107 acres of subsurface mineral interests. The amount of the deposit attributable to Salmar's 107 acres of subsurface mineral interests and subordinated oil and gas interests was $965.76. Salmar's claim was tried in August 1982 with that of another property owner whose leasehold interest in part of the land had been condemned as well; the other property owners' claims were settled. The jury awarded Salmar a total amount of $19,350. Following several post-trial motions about the deposit and rate of interest, the district court entered a final judgment awarding Salmar just compensation in the amount of $19,350, plus interest at the applicable commercial market rate since the date of the filing of the declaration of taking, allowing the government to deduct the deposit and interest accruing on the deposit only after June 1981 (on the ground that Salmar did not have notice of the condemnation pro-

ceedings until that time), for a total award of approximately $30,000.

Salmar then filed a motion for attorney's fees and expenses under the EAJA.[4] The district court denied the motion, holding that the EAJA did not apply to condemnation cases and, alternatively, even if the EAJA did apply to condemnation cases, Salmar was not entitled to an award of attorney's fees and expenses because the position of the United States was substantially justified, that is, the government's offer had been made in good faith on the basis of its expert witness' appraisal. *United States v. 234.55 Acres of Land,* No. 78–1078, slip op. at 2–3 (W.D.Ark. Feb. 28, 1983) (order). This appeal followed.

The property owners in both appeals filed a joint motion to consolidate the appeals. The court granted this motion to consolidate and will address the property owners' arguments as if jointly submitted.

*Arguments of the Parties*

First, appellants argue that the plain language of the EAJA applies to condemnation actions and that application of the EAJA to condemnation actions is consistent with the Act's purpose and legislative history. Appellants specifically argue that the exception clause and the savings provision discussed below do not preclude the application of the Act to condemnation actions. Second, appellants argue that property owners whose land or property interests have been taken in condemnation and who either do not dispute the authority of the government to take the property or, if they do dispute the authority of the government to take the property, lose on that issue, but who win, through litigation, more than the government proposed or offered as just compensation, can be considered "prevailing parties" for purposes of the Act. Finally, appellants argue that the position of the United States was not substantially justified. Appellants in particular note that the government's low offers

---

3. The Honorable Elsijane T. Roy, United States District Judge for the Eastern and Western Districts of Arkansas.

4. It appears from the designated record filed on appeal that the amount requested for attorney's fees and expenses in connection with the litigation was approximately $18,000.

and failure to negotiate and the substantial difference between the amount of just compensation offered by the government and that awarded by the jury indicate that the government's position was not reasonable. Appellants argue that the orders of the district courts denying their motions for costs, attorney's fees and expenses under the EAJA should be vacated and the cases remanded to the district courts to determine whether the government's position was substantially justified.

The government argues that the district courts correctly decided that the EAJA does not apply to condemnation actions. The government notes that 28 U.S.C. § 2412, now 28 U.S.C. § 2412(a), which provides that *costs* may be awarded against the government when the opposing party prevails, has been consistently interpreted not to apply in condemnation proceedings. The government further argues that an unequivocal specific waiver of sovereign immunity with respect to the government's liability for costs, attorney's fees and litigation expenses would be necessary. Next, the government argues that the exception clause and the savings provision preclude application of the EAJA when another statute authorizes an award of attorney's fees. The government notes that the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, § 304, 42 U.S.C. § 4654(a), specifically authorizes the award of costs and attorney's fees to property owners in condemnation actions if the federal agency does not have the authority to condemn the property or the United States abandons the condemnation, *citing United States v. Bodcaw Co.*, 440 U.S. 202, 203, 99 S.Ct. 1066, 1067, 59 L.Ed.2d 257 (1979) (per curiam). The government argues that the legislative history of the EAJA is consistent with this construction of the statute.

The government further argues that, even assuming for the purpose of argument that the EAJA does apply to condemnation actions, the United States, not the property owner, is the prevailing party in condemnation actions, even though the property owner may be awarded much more than the government's offer, unless the condemnation is abandoned or the condemning agency lacks the authority to do so. The government notes that characterizing the United States as the prevailing party in condemnation actions is consistent with the treatment of the award of costs set forth in Fed.R.Civ.P. 54 and 71A and 28 U.S.C. § 2412(a) (formerly 28 U.S.C. § 2412) and actual practice in most condemnation actions, in which the United States successfully takes the land and in exchange pays the landowner just compensation. Finally, the government argues that even assuming for the purpose of argument that the EAJA does apply to condemnation actions and further that the landowner can be the prevailing party, the "position of the United States" was "substantially justified" because in each case its offer or deposit was based upon the appraisal of an expert witness. Thus, there can be no award of attorney's fees and litigation expenses under the EAJA in the present cases.

The arguments of the parties raise three basic issues: (1) whether the EAJA applies to condemnation actions; (2) if the EAJA does apply, whether the property owner can be the prevailing party in condemnation actions in which only the valuation of the property taken is disputed and, if so, under what circumstances; and (3) whether the "position of the United States" was "substantially justified."

*Application of the EAJA to Condemnation Actions*

■ Before the enactment of the EAJA in 1980 (effective October 1, 1981), a prevailing private party could recover costs but not attorney's fees or other expenses against the United States under 28 U.S.C. § 2412 (reenacted with minor changes in language as 28 U.S.C. § 2412(a) of the EAJA):

 Except as otherwise specifically provided by statute, a judgment for costs, as enumerated in section 1920 of this title but not including the fees and expenses of attorneys may be awarded to the pre-

vailing party in any civil action brought by or against the United States or the agency or official of the United States acting in his official capacity, in any court having jurisdiction of such action. With respect to the recovery of attorney's fees against the United States, prevailing private parties historically confronted two obstacles: first, the so-called American Rule under which each litigating party pays its own legal fees. The American Rule is subject only to two narrow exceptions: when the losing party acts in bad faith or when an individual litigant's suit confers a benefit upon a group. Second, under the doctrine of sovereign immunity the United States was not subject to the bad faith or common benefit exceptions to the American Rule nor liable for attorney's fees in the absence of express statutory authorization. Courts "consistently construed [28 U.S.C. § 2412] as immunizing the United States against attorney's fee awards absent clear or express statutory authority to the contrary." *NAACP v. Civiletti*, 197 U.S.App.D.C. 259, 609 F.2d 514, 516 (1979), *cert. denied*, 447 U.S. 922, 100 S.Ct. 3012, 65 L.Ed.2d 1114 (1980). *See generally Spencer v. NLRB*, 229 U.S.App. D.C. 225, 712 F.2d 539, 543–46 (1983) (history of EAJA and its predecessor 28 U.S.C. § 2412), *cert. denied*, —— U.S. ——, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984).

In 1980 Congress passed the EAJA, Pub.L. No. 96–481, 94 Stat. 2325 (1980) (effective Oct. 1, 1981) (codified in 28 U.S.C. § 2412). Congress wanted "to diminish the deterrent effect of seeking review of, or defending against, governmental action by providing in specific situations an award of attorney fees, expert witness fees, and other costs against the United States." EAJA, § 202, 94 Stat. 2321, 2325 (1980).

First, Congress hoped to provide relief to the victims of abusive governmental conduct, to enable them to vindicate their rights without assuming enormous financial burdens. Second, it sought to reduce the incidence of such abuse; it anticipated that the prospect of paying sizeable awards of attorneys' fees when they overstepped their authority and were challenged in court would induce administrators to behave more responsibly in the future. Third, by exposing a greater number of governmental actions to adversarial testing, Congress hoped to refine the administration of federal law—to foster greater precision, efficiency and fairness in the interpretation of statutes and in the formulation and enforcement of governmental regulations.

*Spencer v. NLRB*, 712 F.2d at 550 (footnotes omitted). Section 2412(a) reenacts the authorization in 28 U.S.C. § 2412 for an award of costs, but not attorney's fees or expenses, in favor of the prevailing party in any civil action brought by or against the United States. Section 2412(b) provides that "[u]nless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to costs ..., to the prevailing party in any civil action brought by or against the United States" and further provides that the "United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law," thus making the bad faith and common benefit exceptions applicable against the government, "or under the terms of any statute which specifically provides for such an award." [5]

The most controversial part of the EAJA, and the section at issue here, is a general statutory exception for an award of fees against the government and provides:

> *Except as otherwise specifically provided by statute,* a court shall award to a prevailing party other than the United States fees and expenses, in addition to any costs awarded pursuant to [§ 2412(a) ], incurred by that party in any civil action (other than cases sounding in

---

**5.** Other sections of the EAJA provided for the award of attorney's fees and expenses in connection with administrative proceedings, EAJA, § 203(a), 94 Stat. 2325 (amending 5 U.S.C. § 504), and repealed the Fed.R.Civ.P. 37(f) prohibition against awarding attorney's fees and expenses against the United States as a discovery sanction, EAJA, § 205(a), 94 Stat. 2330.

tort) brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (emphasis added). The exception clause has been underlined for emphasis. " '[F]ees and other expenses' includes the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and reasonable attorney fees...." *Id.* § 2412(d)(2)(A).[6] Title 28 U.S.C. § 2412(d)(1)(A) is subject to its own "sunset provision" and will be automatically repealed unless reenacted before October 1, 1984. 28 U.S.C. § 2412 note. The EAJA also contains the following savings provision:

> Nothing in section 2412(d) of title 28, United States Code, as added by section 204(a) of this title, alters, modifies, repeals, invalidates, or supersedes any other provision of Federal law which authorizes an award of such fees and other expenses to any party other than the United States that prevails in any civil action brought by or against the United States.

EAJA, § 206, 28 U.S.C. § 2412 note.

■ Two circuit courts have addressed the question whether the EAJA applies to condemnation actions and have concluded that it does apply. *United States v. 101.80 Acres of Land,* 716 F.2d 714, 726–27 (9th Cir.1983) (hereinafter *Idaho County*); *United States v. 329.73 Acres of Land,* 704 F.2d 800, 807 (5th Cir.1983) (banc) (hereinafter *Grenada County*). *But see Grenada County,* 704 F.2d at 817–19 (Rubin, J., dissenting); *United States v. 160 Acres of Land,* 555 F.Supp. 84, 86 (D.Utah 1982)

(hereinafter *Duchesne County*). For the reasons discussed below, we agree with the analysis of the Fifth and Ninth Circuits that the EAJA does apply to condemnation actions and that landowners may be prevailing parties for purposes of the EAJA. However, we define "prevailing party" more expansively than the Fifth and Ninth Circuits do, thus enlarging the group of landowners who could be considered prevailing parties under the EAJA. At the same time we do not rely upon the difference between the government's offer or deposit and the award of just compensation in order to determine whether there is substantial justification for the government's position, unlike either the Fifth or the Ninth Circuit. Thus, under our interpretation of the EAJA, the chances of actual recovery of attorney's fees and expenses by a prevailing party landowner are much smaller. This interpretation and application of the EAJA to condemnation actions may seem to give with one hand what it takes away with the other. Nonetheless, we think this approach is in accordance with both the purpose of the EAJA and the nature of condemnation actions.

First, appellants argue that the plain language and the legislative history of the EAJA show that Congress intended the Act to apply to condemnation cases. We agree. The statutory language provides that the court shall award attorney's fees and other litigation expenses to a prevailing party other than the United States "in any civil action (other than cases sounding in tort) brought by or against the United States." 28 U.S.C. § 2412(d)(1)(A). Condemnation actions are civil actions brought by the United States and are not tort cases. The government, however, argues that the statute further provides that *"[e]xcept as otherwise specifically provided by statute,"* the court shall award attorney's fees and other litigation expenses to prevailing par-

---

**6.** The EAJA also requires "parties" to meet certain financial requirements in order to invoke its provisions, but these financial requirements are extremely generous. 28 U.S.C. § 2412(d)(2)(B) (Supp. V 1981) (if an individual, prevailing party's net worth must not exceed $1 million; if sole owner of unincorporated business or partnership, corporation, association, or organization, net worth must not exceed $5 million, except for charitable organizations exempt from taxation under 26 U.S.C. § 501(c)(3) and agricultural cooperative associations, or have more than 500 employees).

ties other than the United States. *Id.* (emphasis added). The government argues that Congress has already specifically provided for the award of attorney's fees and other litigation expenses in condemnation actions in the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, § 304, 42 U.S.C. § 4654(a), which authorizes the award of costs and expenses, including attorney and appraisal fees, to property owners in condemnation actions if the federal agency does not have the authority to condemn the property or the United States abandons the condemnation.[7]

This argument was rejected by the Fifth Circuit majority opinion in *Grenada County*, 704 F.2d at 805 (emphasis in original), on the basis of the legislative history of the exception clause:

> The legislative reports explained the purposes of the exception clause. In deference to the concerns of civil rights groups, Congress specifically did not intend to lessen the remedy provided in "existing fee-shifting statutes" through enactment of the new remedy providing for the award of attorneys' fees in *all* non-tort civil cases.

The House report specifically states:

> [§ 2412(d)(1)(A)] is not intended to replace or supersede any existing fee-shifting statutes such as the Freedom of Information Act, the Civil Rights Acts, and the Voting Rights Act in which Congress has indicated a specific intent to encourage vigorous enforcement, or to alter the standards or the case law governing those Acts.[8] It is intended to apply only to cases (other than tort cases) [9] where fee awards against the government are not already authorized.

H.R.Rep. No. 1418, 96th Cong., 2d Sess. 18, *reprinted in* 1980 U.S.Code Cong. & Ad. News pp. 4953, 4997.[10] We agree with the Fifth Circuit majority opinion that

> [t]he exception [clause] was thus intended to exclude those existing fee-shifting statutes from modification by the Act ... in which Congress had provided an attorneys' fee remedy "to encourage vigorous enforcement" of these statutes. Simply stated, 42 U.S.C. § 4654 ... is not this type of [private enforcement] statute. Rather, a condemnation case not falling within one of the limited and rare instances provided for by § 4654, is among those cases as to which the Act was "intended to apply," being one of those civil "cases (other than tort cases) where fee awards *against* the government are not already authorized."

---

7. 42 U.S.C. § 4654(a) provides:

(a) The Federal court having jurisdiction of a proceeding instituted by a Federal agency to acquire real property by condemnation shall award the owner of any right, or title to, or interest in, such real property such sum as will in the opinion of the court reimburse such owner for his reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred because of the condemnation proceedings, if—
(1) the final judgment is that the Federal agency cannot acquire the real property by condemnation; or
(2) the proceeding is abandoned by the United States.

8. For example, eligibility for an award of attorney's fees under the Civil Rights Attorney's Fees Awards Act of 1976, 90 Stat. 2641 (codified as amended at 42 U.S.C. § 1988), requires only that plaintiffs be prevailing parties; unlike the EAJA, there is no requirement that the position

of the United States be not substantially justified.

9. "Tort cases were excluded because the bill's sponsors considered the legal remedies adequate and equitable in those cases." H.R.Rep. No. 1418, 96th Cong., 2d Sess. 18, *reprinted in* 1980 U.S.Code Cong. & Ad.News 4997.

10. *See also* H.R.Rep. No. 1418, 96th Cong., 2d Sess. 8, *reprinted in* 1980 U.S.Code Cong. & Ad.News 4987 (listing recently enacted fee-shifting statutes: Titles II and VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000a–3(2), 2000e–5(k); Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3612(c); Title III of the Organized Crime Control Act, 18 U.S.C. § 2520; the Freedom of Information Act, 5 U.S.C. § 552(a)(4)(E); the Voting Rights Act of 1975 as amended, 42 U.S.C. § 19731(e); the Consumer Product Safety Act, 15 U.S.C. §§ 2059(e)(4), 2060, 2072(a), 2073; and the Civil Rights Attorney's Fees Awards Act of 1976, as amended, 42 U.S.C. § 1988).

*Grenada County,* 704 F.2d at 806 (citations omitted, emphasis added in cited case).

The government also argues that the savings provision set forth in § 206 of the Act, 28 U.S.C. § 2412 note, supports its position that the Act does not apply to condemnation actions. The government argues that application of the EAJA to condemnation actions alters or modifies existing legislation which deals specifically with condemnation actions, 42 U.S.C. § 4654(a). As discussed earlier, 42 U.S.C. § 4654(a) permits the defendant property owner in a condemnation action to recover attorney's fees and other litigation expenses if the government either is found to lack authority to condemn the property or abandons the condemnation. The government argues that, assuming for the purposes of argument that the property owner can be a prevailing party in a condemnation action in which only the value of the property is disputed, the property owner will necessarily be eligible for an award of attorney's fees and other expenses under § 2412(d)(1)(A) under circumstances in which such an award would not be permitted under 42 U.S.C. § 4654(a). Thus, applying § 2412(d)(1)(A) to condemnation actions would replace or supersede, contrary to the direction of the savings provision, another statutory provision authorizing an award of attorney's fees and other expenses.

■ The Fifth Circuit majority opinion did not find that the EAJA impermissibly replaced or superseded 42 U.S.C. § 4654(a) because in its view the EAJA merely supplemented 42 U.S.C. § 4654(a) by extending the authorization for the award of attorney's fees and other expenses to additional cases. *Grenada County,* 704 F.2d at 807. *But see id.* at 818 (Rubin, J., dissenting). Section 2412(d) does not change or invalidate the requirements set forth in 42 U.S.C. § 4654(a) for an award of attorney's fees and expenses to property owners in condemnation cases. Section 2412(d) does, however, implicitly alter or modify 42 U.S.C. § 4654(a) by extending eligibility for an award of attorney's fees and expenses to property owners in condemnation cases where fee awards against the government were not already authorized under 42 U.S.C. § 4654(a). Such an implicit modification of 42 U.S.C. § 4654(a) is not precluded by the savings provision because 42 U.S.C. § 4654(a) is not the type of fee-shifting statute protected by the savings provision. The legislative history indicates that the savings provision merely restates the cautionary position set forth in the exception clause of § 2412(d)(1)(A). The House report explains that the savings provision "reinforces the statutory language and emphasizes the Congressional intent that the provisions of section 2412(d) of title 28, as added by this bill, shall not supercede or alter existing statutory authority for fee awards against the government." H.R. Rep. No. 1418, 96th Cong., 2d Sess. 19, *reprinted in* 1980 U.S.Code Cong. & Ad. News 4998. Thus, we agree with the Fifth Circuit majority opinion that the savings provision "operates to leave intact the more expansive pre-Act fee-shifting statutes that permit award of attorneys' fees against the government when the private litigant simply prevailed—without the additional requirement now formulated for all *other* cases that the government's actions be unreasonable." *Grenada County,* 704 F.2d at 807 (emphasis in original); *accord Idaho County,* 716 F.2d at 726–27. Because 42 U.S.C. § 4654(a) is not the kind of prevailing party fee-shifting statute Congress intended to protect under the savings provision, the expansion of eligibility for awards of attorney's fees and other expenses beyond that authorized by 42 U.S.C. § 4654(a) is not prohibited by the savings provision.

The government also argues that applying § 2412(d)(1)(A) to condemnation actions to permit an award of attorney's fees and other expenses to the property owner is inconsistent with the award of costs in condemnation cases under pre-Act 28 U.S.C. § 2412 (now § 2412(a)) and Fed.R. Civ.P. 54(d) and 71A(*l*). The government argues that the EAJA did not change the pre-Act § 2412, which has been held not to apply to condemnation cases, *e.g., United*

*States v. Bodcaw Co.*, 440 U.S. at 203 n. 3, 99 S.Ct. at 1067 n. 3; *United States ex rel. TVA v. An Easement*, 452 F.2d 729, 730–31 (6th Cir.1971), or Rule 71A(*l*), and that it would create an anomaly to construe the EAJA to permit an award of attorney's fees and other expenses in condemnation actions to prevailing parties who cannot be awarded costs.

This is a difficult question. Fed.R.Civ.P. 71A(*l*) provides that in land condemnation cases "[c]osts are not subject to Rule 54(d)," which states:

> Except when express provision therefor is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs; but costs against the United States ... shall be imposed only to the extent permitted by law.

The exception of condemnation actions from the normal award of costs was necessary because ordinarily the government will be the prevailing party in condemnation actions and requiring the losing property owner to pay costs for the acquisition of its property would impermissibly reduce the award of just compensation. Fed.R. Civ.P. 71A advisory committee note. Similarly, the former § 2412 (now § 2412(a)) permitted an award of costs, but not attorney's fees, to the prevailing party in any civil action brought by or against the government, but did not apply to condemnation cases. *E.g., United States v. Bodcaw Co.*, 440 U.S. at 203 n. 3, 99 S.Ct. at 1067 n. 3, *citing United States v. 2,186.63 Acres of Land*, 464 F.2d 676 (10th Cir. 1972); *United States ex rel. TVA v. An Easement*, 452 F.2d 729; *and* Fed.R.Civ.P. 71A(*l*). As explained in *Grenada County*, 704 F.2d at 804 n. 7 (citations omitted),

> [t]he reason that the pre-1980 Act § 2412 provision was held to be inapplicable to eminent domain cases—where court costs were then assessed against neither party—was based upon the legislative history of its 1966 expansion to allow court costs against the United States in certain (other) instances. The

legislative intent then was to correct a disparity (in non-condemnation cases) in the imposition of costs where then only the United States and not the private litigant received court costs in the event of prevailing.

■ The Fifth Circuit majority opinion did not have to resolve this apparent inconsistency because the property owner in *Grenada County* did not complain about the denial of costs on application for rehearing en banc, 704 F.2d at 808, but the court suggested in dicta that

> [t]he preferable view may well be that— in light of the *1980* legislative reports and of § 2412(a)'s new statutory context [, including § 2412(b), adopting the common law exceptions to the American Rule,]—§ 2412's coverage was expanded to apply to eminent domain cases by its 1980 re-enactment as part of the Equal Access to Justice, although re-enacted without substantial change in wording as § 2412(a).

*Id.* (emphasis in original, footnote omitted). It is also possible that § 2412(a) continues to be inapplicable to condemnation cases, with costs assessed against neither the government nor the property owner, except as provided under 42 U.S.C. § 4654(a), while at the same time under § 2412(d) the courts could award attorney's fees and other expenses to prevailing parties and against the government where the government's position was not substantially justified. We do not think it is necessary to resolve this apparent inconsistency because we do not read § 2412(d)(1)(A) to condition an award of attorney's fees and other expenses upon an award of costs. *But see id.* at 817 & n. 9 (Rubin, J., dissenting) (arguing that the phrase "in addition to any costs awarded pursuant to [§ 2412(a) ]" in § 2412(d)(1)(A) "implies that Congress intended to award fees only to a litigant who is permitted to recover costs"). Section 2412(d)(1)(A) provides in part that "a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection [2412(a) ]." In our

view the "in addition to any costs awarded pursuant to subsection [2412(a)]" language expresses the intent of Congress that under § 2412(d)(1)(A) qualified prevailing parties shall be awarded attorney's fees and, when available, costs as well.

Finally, we submit that application of the EAJA to condemnation actions, although admittedly not without some analytical problems given the special nature of condemnation actions, is supported by the legislative history. Although the legislative history specifically addresses the situation of most individuals and small businesses who "are the target of agency action precisely because they do not have the resources to fully litigate the issue [of government regulation]," H.R.Rep. No. 1418, 96th Cong., 2d Sess. 10, *reprinted in* 1980 U.S.Code Cong. & Ad.News 4988, there are many references in the legislative hearings to the problems of landowners whose property had been taken in condemnation. As noted in *Idaho County*, 716 F.2d at 720 (footnote omitted):

> Senator DeConcini, a co-sponsor of the bill enacted as the Act, for example, thought that the lack of pre-Act authorization for recovery of litigation expenses from the government in condemnation cases was one of the specific problems that would be corrected by the bill. *Equal Access to Justice Act of 1979: Hearings on S. 265 Before the Subcomm. on Improvements in Judicial Machinery of the Senate Comm. on the Judiciary*, 96th Cong., 1st Sess. 34 (1979) (statement of Subcomm. Chairman DeConcini) (landowner who challenges condemnation in court, "even if [he] win[s], is not going to get a fair market price for [the] land by the time [he] get[s] through with [his] costs," since pre-Act law "does

not provide for costs of litigation or appeal" in successful condemnation cases).... Moreover, several persons appearing at the Congressional hearings on the Act, including members of the Department of Justice, either directly or impliedly indicated that the bill would encompass condemnation cases and hence that a condemnee would in some cases be a prevailing party under the Act.

*See also Award of Attorneys' Fees Against the Federal Government: Hearings on S. 265 Before the Subcomm. on Courts, Civil Liberties, and the Administration of Justice of the House Comm. on the Judiciary*, 96th Cong., 2d Sess. 508 (1980) (letter of Oct. 17, 1979, from Assistant Attorney General Alan A. Parker to Comm. Chairman Rodino, opposing proposed legislation because it would apply to many types of cases involving the government, including condemnation actions, and would be extremely expensive);[11] *Equal Access to Justice Act of 1979: Hearings on S. 265 Before the Subcomm. on Improvements in Judicial Machinery of the Senate Comm. on the Judiciary*, 96th Cong., 1st Sess. 50–52 (1979) (statement of Deputy Assistant Attorney General Raymond S. Calamaro, opposing bill) (in fiscal year 1978 real property actions, including land condemnation actions, accounted for 23% of the civil actions in federal district court in which the United States was a party; budget estimates for S. 265 should include "expert witness fees and [special costs of] analyses, studies, tests and reports" incurred by landowners who prevail in "land condemnation cases" where the government's position is not substantially justified).

---

11. In the letter of Oct. 17, 1979, the Department of Justice outlined in part its reasons for opposing the proposed Act:

> [the proposed Act would require] the Government to pay attorney fees in virtually every case that it loses, unless it can establish that its litigation position was substantially justified. Thus, the legislation would apply in contract disputes, social security matters, land condemnation suits, environmental enforce-

ment actions, and almost every other type of case that the Government litigates.... We submit that this broad-brush approach, which is so contrary to recent Congressional policy in the fee-shifting area, would cause litigation to become more protracted, more time-consuming, and more expensive, and that the only real beneficiaries would be the attorneys who would reap a financial harvest in additional fees.

We thus conclude that the EAJA does apply to condemnation actions.

*Prevailing Party*

■ Next, appellants argue that property owners whose land or property interests have been taken in condemnation and who either do not dispute the authority of the government to take the property or, if they do dispute the authority of the government to take the property, lose on that issue, but who win, through litigation, more than the government proposed or offered as just compensation can be considered "prevailing parties" for the purposes of the EAJA. The government argues that unless it is found to lack the authority to condemn or abandons the condemnation, the government and not the property owner is the prevailing party in condemnation actions because, even though the property owner may recover more money, the government has successfully acquired the property.

The EAJA unfortunately does not define "prevailing party." The legislative reports indicate that Congress intended the term "prevailing party" be used in a manner consistent with the practice developed under existing fee-shifting statutes:

> Under existing fee-shifting statutes, the definition of prevailing party has been the subject of litigation. It is the committee's intention that the interpretation of the term in S. 265 be consistent with the law that has developed under existing statutes. Thus, the phrase "prevailing party" should not be limited to a victor only after entry of a final judgment following a full trial on the merits. A party may be deemed prevailing if he [or she] obtains a favorable settlement of his [or her] case, ... if the plaintiff has sought a voluntary dismissal of a groundless complaint, ... or even if he [or she] does not ultimately prevail on all issues ....
>
> In cases that are litigated to conclusion, a party may be deemed "prevailing" for purposes of a fee award in a civil action prior to the losing party having exhausted its final appeal. A fee award may thus be appropriate where the party has prevailed on an interim order which was central to the case, ... or where an interlocutory appeal is "sufficiently significant and discrete to be treated as a separate unit" ....

H.R.Rep. No. 1418, 96th Cong., 2d Sess. 11, *reprinted in* 1980 U.S.Code Cong. & Ad. News 4990 (citations and footnote omitted). The examples cited in the legislative report include parties who are only partially successful and support a fairly broad interpretation of the term "prevailing party." *See Idaho County,* 716 F.2d at 721–25; *Grenada County,* 704 F.2d at 808–09.

However, deciding that partially successful litigants may be prevailing parties for purposes of the EAJA does not resolve the question whether property owners whose property is taken in condemnation actions can properly be characterized as prevailing parties. On the one hand, because the government has the power of eminent domain under the fifth amendment, the government will almost always be the prevailing party if prevailing party status is determined exclusively on the basis of acquisition of the property for public use. The government will not be successful in acquiring the property only if it is found to lack the authority to do so or if it abandons the condemnation. Thus, if condemnation actions are considered in terms of whether the government successfully acquires the property, it is conceptually impossible to characterize the property owner, who, after all, has lost the property, as the prevailing party. *See Grenada County,* 704 F.2d at 816 (Rubin, J., dissenting); *United States v. 101.80 Acres of Land,* 92 F.R.D. 774 (D.Idaho 1982), *aff'd in part and rev'd in part,* 716 F.2d 714 (9th Cir.1983); *see also* Fed.R.Civ.P. 71A advisory committee note ("Since the condemnor will normally be the prevailing party and since he should not recover his costs against the property owner, Rule 54(d) ... is made inapplicable.").

On the other hand, it is also true that in the usual condemnation case the issue is not the authority of the government to condemn the property but the value of the property: the government asserts that the

property is worth less than the property owner claims it is worth. When the government and the property owner cannot agree, the issue of the amount of just compensation is submitted to a jury or commission pursuant to Fed.R.Civ.P. 71A for determination. And quite often the jury or commission will follow neither parties' evidence or expert witnesses and instead award what is essentially a compromise amount higher than the government's valuation but lower than the property owner's. Thus, if condemnation actions are considered in terms of whether the property owner successfully obtains more money than the government offered or deposited as just compensation for the property taken, it is conceptually possible to characterize the property owner as the prevailing party. The property owner has prevailed to the extent that it receives more money.

The distinction between the authority to condemn and the amount of compensation was set forth initially in the context of awarding costs against the government in *Government of Virgin Islands v. 19.623 Acres of Land,* 602 F.2d 1130, 1135–36 (3d Cir.1979), a pre-Act case involving condemnation under Virgin Islands law. The Third Circuit majority opinion stated that

> if the issue is the government's right to take the property ... and the government is successful in establishing that right, the government could well be regarded as the prevailing party. But when ... the issue is the amount of just compensation to which the condemnee is entitled and where ... the amount actually awarded by the court exceeds very substantially the amount of the government's original offer and deposit, it would not seem unreasonable to hold that the condemnee would be the prevailing party ....

*Id.* (citations omitted). This distinction and the emphasis upon the substantially greater award was adopted by the Fifth Circuit: "Whatever the test of 'prevailing party' might be in other circumstances, for purposes of § 2412(d) it would clearly include a landowner who won by judgment or negotiation far more than the government had

offered or admitted liability for in a condemnation case." *Grenada County,* 704 F.2d at 809; *accord Idaho County,* 716 F.2d at 723.

We agree that for purposes of § 2412(d) the term "prevailing party" may include a property owner who wins by judgment or negotiation and settlement more than the government offered or admitted liability for in a condemnation case. This is consistent with the expansive interpretation given to "prevailing party" in existing fee-shifting statutes. "A typical formulation is that 'plaintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (footnote omitted), *citing Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir.1978). *Hensley v. Eckerhart* involved the Civil Rights Attorney's Fees Awards Act of 1976, 90 Stat. 2641 (codified as amended at 42 U.S.C. § 1988), which was patterned upon the attorney's fees provisions of the 1964 Civil Rights Act. *See Hanrahan v. Hampton,* 446 U.S. 754, 758 n. 4, 100 S.Ct. 1987, 1989 n. 4, 64 L.Ed.2d 670 (1980) (per curiam); S.Rep. No. 1011, 94th Cong., 2d Sess. 4, *reprinted in* 1976 U.S.Code Cong. & Ad.News 5908, 5912. The Court noted in *Hensley v. Eckerhart,* however, that "[t]he standards set forth in this opinion are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'" 103 S.Ct. at 1939 n. 7. *But see Idaho County,* 716 F.2d at 719 n. 7 (*Hensley v. Eckerhart* not of assistance in defining prevailing party for purposes of § 2412(d)).

Applying the *Hensley v. Eckerhart* test of prevailing party to the present case, we think it is clear that property owners may be prevailing parties in condemnation actions when they win either by judgment or settlement more than the government offered or deposited as just compensation. Such property owners "succeed on a significant issue in litigation which achieves

some of the benefit the parties sought in bringing suit," *Nadeau v. Helgemoe*, 581 F.2d at 278–79; here, appellants went to trial for the express purpose of winning more money as just compensation and achieved that end. Moreover, if property owners who recover more than the government offers as just compensation in condemnation cases are not considered prevailing parties for purposes of § 2412(d), the EAJA would essentially have no effect in condemnation actions. Unless property owners who win more money as just compensation can be prevailing parties, the only property owners who could qualify for prevailing party status would be those property owners who successfully challenge the government's authority to condemn or if condemnation proceedings against their property are abandoned, which was precisely the situation that existed under 42 U.S.C. § 4654(a), *before* the enactment of the EAJA. Such a narrow interpretation of "prevailing party" precludes application of § 2412(d) to condemnation actions, contrary to Congressional intent.

This definition of prevailing party for purposes of § 2412(d) does not depend upon the relative size of the award. Judge Rubin perceptively notes in his dissenting opinion in *Grenada County*, 704 F.2d at 816 n. 7, that the definition of prevailing party adopted by the Fifth Circuit majority opinion says only that the landowner who recovers "far more" than the government offered "would clearly" be a prevailing party, but does not specify how much is "far more" or what the relationship is between "far more" and the additional statutory requirement of "substantial justification." *But cf. Idaho County*, 716 F.2d at 723 ("a condemnee who ... secures a just compensation award substantially greater than the original deposit, is to be considered a prevailing party under section § 2412"), 728 (government's position was not substantially justified where "the government's original deposit was wholly inadequate, representing only a fraction of the true value of the [property] condemned as found by the jury"). As noted by Judge Rubin,

there is [no] principled way of determining who prevails from the relative size of the award so that a landowner who is awarded $100,000 more than the government offers "prevails" but one who gets $1 more does not "prevail." ... To say that the landowner "wins" if he [or she] gets a lot more than the government offered but not if he [or she] gets a little bit more seems ... to ignore the difference between determining who is the prevailing party on the one hand and whether there is substantial justification for the government's position on the other.

*Grenada County*, 704 F.2d at 816 n. 7 (Rubin, J., dissenting); *see also Duchesne County*, 555 F.Supp. at 87. For this reason, we define "prevailing party" for purposes of § 2412(d) to include property owners who simply recover more than the government offers as just compensation in condemnation cases. Similarly, property owners who recover less than the government offers would not be prevailing parties for purposes of § 2412(d).

*Substantial Justification*

■ Having determined that property owners may be prevailing parties for purposes of § 2412(d) and when they may be characterized as prevailing parties, the next question is whether the position of the government was substantially justified. Under 28 U.S.C. § 2412(d)(1)(A), prevailing parties shall be awarded attorney's fees or other expenses unless the position of the government was substantially justified or special circumstances make an award unjust. In the present case we are concerned with the substantial justification clause. The meaning of the terms "the position of the United States" and "substantially justified" is not clearly defined in the EAJA. However, the courts have developed a working definition for "substantially justified." *See Spencer v. NLRB*, 712 F.2d at 546–61 (excellent comprehensive discussion). As stated in *Foley Construction Co. v. United States Army Corps of Engineers*, 716 F.2d 1202, 1203–04 (8th Cir.

1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984):

> The legislative history is helpful in interpreting the substantially justified standard. The House committee report on the EAJA states:
>
>> The test of whether or not a Government action is substantially justified is essentially one of reasonableness. Where the Government can show that its case had a reasonable basis both in law and in fact, no award will be made....
>>
>> ....
>>
>> The standard, however, should not be read to raise a presumption that the government position was not substantially justified, simply because it lost the case. Nor, in fact, does the standard require the Government to establish that its decision to litigate was based on a substantial probability of prevailing.
>
> H.R.Rep. No. 1418, [96th Cong., 2d Sess.] 10–11, [1980] U.S.Code Cong. & Ad.News 4989–90. Although the committee report is strong evidence that a reasonableness standard should be applied, we must also consider that the Senate Judiciary Committee rejected an amendment to the EAJA that would have changed the language of the bill from "substantially justified" to "reasonably justified." S.Rep. No. 253, 96th Cong., 1st Sess. 8 (1979).
>
> ....
>
> ... We now hold that the test of whether the position of the United States is substantially justified is essentially one of reasonableness in law and in fact. The government bears the burden of proving the substantial justification of its position.

*See also Spencer v. NLRB,* 712 F.2d at 557 n. 66 (listing cases applying similar analysis of "substantially justified").

The courts have been unable to reach a consensus about the meaning of the term "the position of the United States." As noted in *Spencer v. NLRB,*

> [t]he government's "position" ... might mean one of two things. First, the term could refer to the governmental action that precipitated the lawsuit. Second, it could refer to the posture assumed by the government in litigation. These two interpretations have come to be known, respectively, as the *"underlying action"* and the *"litigation position"* theories.
>
> ....
>
> ... [I]n the large majority of contexts, it makes no functional difference how one conceives of the government's "position." In actions brought *by* the United States, the governmental action that precipitates the controversy almost invariably *is* its litigation position. Most suits brought *against* the United States entail a similar correspondence. In the usual case, the government acts in a particular fashion and then defends its conduct before an administrative agency [or] a court [or both]. Under such circumstances, the litigation position of the United States will almost always be that its underlying action was legally justifiable.

*Id.* at 546, 551–52 (citations and footnotes omitted; emphasis in original); *see Foley Construction Co. v. United States Army Corps of Engineers,* 716 F.2d at 1204 (adopting litigation position theory on the facts in that case). *But see, e.g., Natural Resources Defense Council v. United States Environmental Protection Agency,* 703 F.2d 700, 707 (3d Cir.1983) (adopting underlying action theory).

Dissatisfaction with both the underlying action and litigation position theories has prompted the articulation of an inclusive, hybrid theory. The Ninth Circuit in *Rawlings v. Heckler,* 725 F.2d 1192, 1195–96 (9th Cir.1984), concluded that "Congress intended to include both the underlying action and the government's litigation posture within the term position" and that "the remedial purpose of the EAJA is best served by considering the totality of the circumstances prelitigation and during trial." We recently followed the Ninth Circuit's interpretation of "position of the

United States" in *Iowa Express Distribution, Inc. v. NLRB,* 739 F.2d 1305 at 1309–1310 (8th Cir.1984). Thus, we must consider the totality of the circumstances—prelitigation and during litigation—in determining whether the position of the government was substantially justified. Here, the government had the property in question appraised and then offered this amount to the property owners as just compensation. This is the underlying governmental action or prelitigation position that precipitated the lawsuit. At trial (and on appeal in the Minnesota cases) the government's litigation position was that its underlying action or prelitigation position was legally justifiable. In this context then, whether the government's position was substantially justified depends upon whether the government's refusal to offer more money to the property owners as just compensation had a reasonable basis in law and in fact.

 Because we cannot determine from the record on appeal whether the government's position in each case was substantially justified, we remand the cases to the district court for further proceedings. On remand the district court should determine whether the government's position was substantially justified by considering the totality of the circumstances prelitigation and during trial. *See id.* at 1309, *citing Rawlings v. Heckler,* 725 F.2d at 1195–96. As noted in *Foley Construction Co. v. United States Army Corps of Engineers,* 716 F.2d at 1204, "the test of whether the position of the United States is substantially justified is essentially one of reasonableness in law and in fact. The government bears the burden of proving the substantial justification of its position."

In the context of these condemnation cases, the district court must determine whether the government's refusal to offer more money to the property owners as just compensation had a reasonable basis in fact and in law. Presumably, the government's offer will be reasonably close to the appraisals made by the government's appraisers. The government's offer should also be reasonably close to the valuations established by the government's expert witnesses during trial. Any substantial disparity between the offer, the appraisals, and the government's trial evidence should be explained by the government. The passage of time and the timing of the actual takings are the kinds of factors that may explain a disparity between the government's offer and the evidence of value presented at trial. The district court should also consider whether the government acted reasonably in relying upon the valuations of its appraisers and expert witnesses. The district court may consider the qualifications and possible conflicts of interest of the appraisers and expert witnesses relied upon by the government, as well as the factual basis of their appraisals, in making its determination of reasonableness.

 If the government's appraisers are qualified or the other evidence of valuation is sufficient, the government's prelitigation position or offer is substantially justified if it is based upon and consistent with the appraisals or other evidence of valuation. Similarly, the government's litigation position is substantially justified if the amount established by the government during trial is based upon and consistent with the appraisals or other evidence of valuation. The district court should focus upon the relationship between the government's offer, the appraisals, and the valuations established by the government's expert witnesses during trial, rather than the relationship between the government's offer or deposit[12] and the property owner's coun-

---

**12.** Comparing the deposit with the jury award (or settlement) fails to recognize the limited purpose of the deposit under the Declaration of Taking Act, 40 U.S.C. § 258a et seq. As explained in *United States v. 75.13 Acres of Land,* 693 F.2d 813, 817 (8th Cir.1982) (per curiam),

[t]he Taking Act ... requires the United States to deposit with the court a "sum of money estimated ... to be just compensation for the land taken." It is settled, however, that this "estimated compensation" is not evidence of the value of the property taken.

teroffer, if any, or the jury award,[13] as in *Idaho County*, 716 F.2d at 728 (describing the government's original deposit as "wholly inadequate" because it represented "only a fraction of the true value of the [property taken] as found by the jury").[14] Whether the government acted reasonably in refusing to offer more money as just compensation should not depend upon whether the jury awarded more money because such a comparison would rest upon the mistaken premise that the government's lower offer was not substantially justified simply because the government "lost" the case and as a result had to pay more for the property.

■ In sum, we conclude that assessing the reasonableness of the government's action in these condemnation cases, where the value of the property taken is disputed, by comparing the government's offer with the valuations of its appraisers and expert witnesses is consistent with the EAJA's intermediate standard of liability and proof. *See Spencer v. NLRB*, 712 F.2d at 550–51. As described in the House report, "[t]he standard and burden of proof adopted in S. 265 [, which became the EAJA,] represents an acceptable middle ground between an automatic award of fees [to prevailing parties] and the restrictive standard proposed by the Department of Justice [to award fees only where the government action was arbitrary, frivolous, unreasonable, or groundless]."[15] H.R.Rep. No. 1418, 96th Cong., 2d Sess. 14, *reprinted in* 1980 U.S. Code Cong. & Ad.News 4993.

*Sovereign Immunity*

■ Given the above discussion, we find the requisite express waiver of sover-

---

*Evans v. United States*, 326 F.2d 827, 830 (8th Cir.1964). Moreover, the Supreme Court has plainly stated that the estimate deposited by the government does not establish a minimum award to which landowners are entitled. *United States v. Miller*, 317 U.S. 369, 381–82, 63 S.Ct. 276, 283–84, 87 L.Ed. 336 (1943). The government's deposit may in fact represent the government's offer of the value of the property taken on the basis of its expert witnesses' appraisals. However, our analysis compares the government's offer, which may or may not be the same amount as the deposit, with its expert witnesses' appraisals.

13. Comparing the government's offer to the property owner's counteroffer, if any, or to the jury award fails to acknowledge that when the government acquires private property for public use, its obligation is to pay just compensation, not premium prices.

The difficulties inherent in using a comparison between the government's offer and the property owner's counteroffer or the jury award to determine whether the government's position was substantially justified in condemnation cases can be illustrated by using the figures set forth in *Grenada County*, 704 F.2d at 816 n. 8 (Rubin, J., dissenting), *citing United States v. 6,162.78 Acres of Land*, 680 F.2d 396 (5th Cir. 1982). In the *6,162.78 Acres of Land* case, the government's *highest* appraisal was $1,891,173 and it offered this amount to the property owner as just compensation. The property owner refused this offer because its *lowest* appraisal was $3,052,193. The case went to trial and the jury awarded $2,071,973, which was an amount about $180,000 greater than the government's offer but almost $1,000,000 less than the proper-

ty owner's figure. The property owner recovered more than the government's offer by going to trial, but, at the same time, as noted by Judge Rubin, it could be argued that the government actually *saved* about $980,000 by refusing to pay more and by submitting the issue of just compensation to the jury.

14. Nor should the comparison be drawn between the government's offer or deposit and the settlement, if any, because the settlement will almost certainly reflect a compromise in the positions of both the government and the property owner. *But see Duchesne County*, 555 F.Supp. at 87 (comparing the government's initial offer and the amount of the settlement.

15. The mandatory award of attorney's fees to prevailing parties was rejected because it was expected to be very expensive and "did not account for the reasonable and legitimate exercise of governmental functions and thus might have a chilling effect on proper governmental enforcement efforts." H.R.Rep. No. 1418, 96th Cong., 2d Sess. 6, 14, *reprinted in* 1980 U.S.Code Cong. & Ad.News 4985, 4992. Congress also considered and rejected a purely discretionary standard because it was thought likely to be ineffective and in any event failed to provide any guidelines. *Id., reprinted in* 1980 U.S.Code Cong. & Ad.News 4993. The Department of Justice proposed standard, taken from *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 417, 98 S.Ct. 694, 698, 54 L.Ed.2d 648 (1978), was rejected as unnecessarily restrictive and difficult to prove. H.R.Rep. No. 1418, 96th Cong., 2d Sess. 14, *reprinted in* 1980 U.S.Code Cong. & Ad.News 4993.

eign immunity with respect to liability for attorney's fees and other expenses, although not costs in condemnation actions, in the plain language of the EAJA:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A); *cf. Idaho County*, 716 F.2d at 725 n. 18 (waiver of sovereign immunity for costs, fees, and expenses).

### Conclusion

We hold that the EAJA does apply to condemnation actions, that property owners may be prevailing parties for purposes of § 2412(d) by recovering more than the amount offered by the government as just compensation for the property taken, and that the government's refusal to offer more money as just compensation is substantially justified if its offer is consistent with appraisals upon which the government is reasonably entitled to rely. Accordingly, we reverse and remand the cases to the district courts for further proceedings consistent with this opinion.

JOHN R. GIBSON, Circuit Judge, dissenting.

I respectfully dissent from the court's opinion today. I would affirm the denial of attorneys' fees and expenses because they are not authorized by the EAJA. I agree with the dissenting opinion of Judge Alvin B. Rubin in *United States v. 329.73 Acres of Land*, 704 F.2d 800, 813 (5th Cir.1983) (en banc).

Section 206 of the EAJA, the saving provision, provides that "[n]othing in Section 2412(d) * * * alters, modifies, repeals, invalidates or supersedes" other statutes authorizing the award of fees and costs to persons prevailing in actions brought by or against the United States. 28 U.S.C. § 2412 note (1982). Judge Rubin forcefully argues that this language excludes condemnation cases from the EAJA, since any other interpretation would modify or repeal the pre-existing cost and fee guidelines for condemnation cases contained in 42 U.S.C. § 4654(a) (1982) and Fed.R.Civ.P. 71A(*l*). Judge Rubin observes that the savings provision was added as an amendment after the Senate hearings on the full Act were completed, during which testimony was heard concerning the EAJA's substantial financial impact on the government. He reasons that this sequence evidences a general congressional intent to limit the cost of the EAJA to the government, and concludes that this intent can be effectuated only by interpreting the saving provision as deferring in condemnation cases to the more limited recovery of costs available under section 4654(a) and Rule 71A(*l*). This observation deprives the legislative history cited by the Court today of much of its persuasive force.

Judge Rubin's opinion also highlights the deficiencies in the majority's discussion of prevailing party. To define a prevailing party as one who simply recovers "more" than the government offers stretches the meaning of the statute beyond the limits of reason. In the words of Judge Rubin, "[u]nless the government loses or abandons the condemnation suit—situations provided for in § 4654—it will be the 'prevailing party.' This is because the government got what it sought—the land—even though it had to pay a higher price than it originally offered." 704 F.2d at 816 (citations omitted).

The Court today reaches its conclusion to avoid determining how much more than the government's offer a person must recover to qualify as a prevailing party: far more (or substantially greater than), a little more, or simply *more*, which can mean as little as one dollar more. To establish such

a minimal threshold for the allowance of attorneys' fees offends common sense. The Court thus reaches the worst possible answers in its effort to avoid drawing a fine line.

The issue of substantial justification is analyzed only after what I believe to be an improper application of the EAJA to condemnation cases and the adoption of an erroneous definition of prevailing party. I would affirm the judgment of the district court because the EAJA does not apply to condemnation actions.