**Mary E. LOCKHART, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of Social Security, Defendant.**

**No. CIV. A. 97–0121–A.**

United States District Court,
W.D. Virginia,
Abingdon Division.

April 21, 1998.

John M. Heuser, Browning, Lamie & Sharp, PC, Grundy, VA, John M. Heuser, Browning & Sharp, P.C., Lebanon, VA, for Plaintiff.

John F. Corcoran, U.S. Attorney's Office, Roanoke, VA, for Defendant.

## OPINION

JONES, District Judge.

In this social security case, I affirm the final decision of the Commissioner.

### I. Background.

Mary E. Lockhart filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") denying the plaintiff's claim for supplemental security income ("SSI") benefits under title XVI of the Social Security Act, 42 U.S.C.A. §§ 1381–1383d (West 1993 & Supp. 1998) ("Act"). Jurisdiction of this court exists pursuant to 42 U.S.C.A. § 1383(c)(3).

Lockhart administratively applied for benefits on June 28, 1993, alleging disability since January 1, 1990, and received a hearing before an administrative law judge ("ALJ") on March 16, 1995. By decision dated March 24, 1995, the ALJ found that the plaintiff was not disabled within the meaning of the Act. Lockhart filed suit in this court, seeking review of the decision, and thereafter the case was remanded to the Commissioner for further consideration and development. *Lockhart v. Chater,* No. 95–0109–A (W.D.Va. Mar. 13, 1996) (Kinser, J.)

Following remand, a second hearing was held before a different ALJ on December 17, 1996. The ALJ issued his decision on March 21, 1997, also finding that the plaintiff was not disabled. The Social Security Administration's Appeals Council denied review, and the ALJ's opinion constitutes the final decision of the Commissioner.

The Commissioner has now moved for summary judgment, based on the administrative record. The issue in the case, as it was before the Commissioner, is whether the plaintiff is disabled, and thus qualifies for benefits, by reason of having a "listed impairment" within the meaning of the applicable regulations.

### II. Facts.

In her initial applications for benefits the plaintiff contended that she was disabled because of back pain, and her "nerves." She was born in 1951 and has a seventh grade education. Her only recent work history was a part-time job as a school janitor assigned to her in order to qualify for public assistance.

The plaintiff claims she fractured her coccyx in 1983, although there was no medical evidence of that fact. She broke her little toe in 1993, and that healed satisfactorily. She complains of low back pain, but an x-ray of her lumbosacral spine in 1993 found no abnormality, and a medical adviser for the Commissioner opined at the first hearing

that her pain probably resulted from inactivity and poor muscle tone. (R. at 66.) [1]

In September 1994, Dr. Steve Savage, a psychologist, conducted an evaluation in regard to the plaintiff's alleged mental impairment. On the Wechsler Adult Intelligence Scale—Revised ("WAIS–R"), the plaintiff obtained a verbal IQ score of 71, a performance IQ score of 71, and a full scale IQ score of 69. However, Dr. Savage stated that "the [plaintiff's] effort was spotty at times" and he was of the opinion that these scores represent the minimum level of the plaintiff's intellectual ability. (R. at 136.) Accordingly, Dr. Savage found that the plaintiff functions in the borderline intelligence range. He also diagnosed periodic depression and anxiety and found plaintiff's mental ability to perform work-related activities to be "limited but satisfactory" or better in all areas of functioning except dealing with the public and understanding and carrying out complex job instructions, which he rated as "seriously limited but not precluded." (R. at 139–40.) [2]

Another psychologist, Dr. James M. Hagan, testified at the first administrative hearing. Based on Dr. Savage's report, Dr. Hagan concluded that the plaintiff functions in the borderline range of intelligence. Dr. Hagan also rated the plaintiff's mental ability to make occupational, performance, and personal/social adjustments in a work setting and opined that the plaintiff's ability to deal with the public, deal with work stresses, maintain attention/concentration, understand and carry out detailed job instructions, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability is "seriously limited but not precluded" and that she has no useful ability to understand and carry out complex job instructions. In all other categories, Dr. Hagan found that the plaintiff's ability is "limited but satisfactory." (R. at 153.)

Following the first administrative hearing, at the request of her attorney, the plaintiff underwent a psychological evaluation by Dr.

L. Andrew Steward. Dr. Steward also administered the WAIS–R. The plaintiff had scores similar to those on the first test—a verbal IQ score of 72, a performance IQ score of 70, and a full scale IQ score of 69. Unlike Dr. Savage, however, Dr. Steward stated that the plaintiff appeared to be trying diligently on all the tests and considered the results to be accurate. Consequently, Dr. Steward concluded that the plaintiff functions in the mild mental retardation range. He also stated that she has gross deficits in thinking and reasoning abilities. In addition, Dr. Steward diagnosed a severe, recurrent, major depressive disorder and a generalized anxiety disorder. He opined that the plaintiff has no useful ability to make occupational, performance, and personal/social adjustments except for following work rules, maintaining attention/concentration, understanding and carrying out simple job instructions, maintaining personal appearance, and demonstrating reliability, which he rated as "seriously limited but not precluded." (R. at 9–10.)

Since neither the ALJ nor Dr. Hagan had the benefit of Dr. Steward's report, this court remanded the case to the Commissioner, in order to resolve the conflict in opinion among the experts. (R. at 231.)

Following remand, Dr. Savage again evaluated the plaintiff, and this time he found that her IQ scores were valid. The plaintiff was also examined by Dr. Mina Patel, a psychiatrist, at the request of the Commissioner. Dr. Patel diagnosed the plaintiff as having "adjustment reaction with mixed emotional features, borderline intelligence." (R. at 245.) Dr. Patel found that the plaintiff's mental ability to perform work-related activities was "limited but satisfactory" as to following work rules and ability to understand, remember and carry out simple job instructions, and maintain personal appearance, and that as to other activities her ability was "seriously limited, but not precluded" except as to understanding, remembering and carry-

---

1. The plaintiff testified that she spends her days watching television. (R. at 61, 200.)

2. All of the medical experts completed similar Social Security Administration forms entitled,

"Medical Assessment of Ability to Do Work–Related Activities," which required indicating by check-mark the claimant's ability level for various activities.

ing out complex job instructions, for which she had no useful ability. (R. at 247–48.)

Finally, Dr. Hagan testified at the second hearing, and after reviewing all of the medical reports, concluded that aside from the plaintiff's mild mental retardation, she had no other significant functional limitation. (R. at 203.)

Based on this evidence, the ALJ determined that the plaintiff did not meet the listed impairment, and thus was not disabled within the meaning of the Act.

### III. Analysis.

Under the Act, it is always a claimant's burden to provide evidence of disability. *Blalock v. Richardson,* 483 F.2d 773, 775 n. 3 (4th Cir.1972); 20 C.F.R. §§ 416.912, 416.914 (1997). In order to carry this burden, a claimant must show a physical or mental impairment that results from anatomical, physiological, or psychological abnormalities demonstrated by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C.A. § 1382c(a)(3)(D).

The Commissioner applies a five-step sequential evaluation process in assessing a claimant's disability claim. The Commissioner considers, in sequence, whether the claimant: (1) is working at substantial gainful employment; (2) has a severe impairment; (3) has a condition which meets or equals the severity of a listed impairment; (4) can return to her past relevant work; and (5) if not, whether she can perform other work in the national economy. If a decision can be reached at any step, further evaluation is unnecessary. 20 C.F.R. § 416.920 (1997). In this case, it is only step (3) which is at issue.

The question is whether the plaintiff has an impairment which meets or is equal in severity to the listed medical impairment contained in listing 12.05C, which requires:

A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional

and significant work-related limitation of function.

20 C.F.R. part 404, subpart P, appendix 1, listing 12.05C (1997).

Following the remand from this court, there is no question but that the plaintiff meets the first part of the listing—a full scale IQ of 60 through 70—and the ALJ so found. (R. at 172.) The crucial issue is whether the plaintiff has an impairment imposing additional and "significant" work-related limitation of function.

The regulations do not define the "significance" requirement of 12.05C and as a result there has been varying interpretations among the circuits. *See* Peter J. Lemoine, *Significant Work Related Limitation of Function Under § 12.05C,* 51 Soc. Sec. Rep. Ser. 1003 (1996). The Social Security Administration takes the position that the limitation must result "in more than minimal limitations in the individual's ability to do basic work activity" and that "the adjudicator in each case decides whether an impairment constitutes a significant work-related limitation of function based on all evidence ...." Social Security Acquiescence Rulings 93–1(4), 58 Fed.Reg. 25,996, 25,997 (1993), and 98–2(8), 63 Fed.Reg. 9,279, 9,280 (1998).

The Fourth Circuit has held that if a claimant cannot return to her past relevant work for a reason other than her limited IQ, she has established a work-related limitation of function which meets the requirements of 12.05C. *Flowers v. U.S. Dep't of Health & Human Servs.,* 904 F.2d 211, 212 (4th Cir. 1990). In *Branham v. Heckler,* 775 F.2d 1271 (4th Cir.1985), the Fourth Circuit held that where a claimant who met the IQ limitations of 12.05C also suffered from a back impairment which precluded his past relevant work but permitted light work, the significant prong of the test had been met, as a matter of law. *Id.* at 1273–74. In the present case, the ALJ found that the plaintiff is capable of light work [3] and the plaintiff thus

---

**3.** The regulations classify jobs as sedentary, light, medium, heavy, and very heavy, depending on the physical exertion required. *See* 20 C.F.R. § 416.967 (1997). Light exertional work involves lifting no more than 20 pounds at a time

with frequent lifting or carrying of objects weighing up to 10 pounds; it may involve either a good deal of walking or standing, or sitting with some pushing and pulling of arm or leg controls. 20 C.F.R. § 416.967(b). A finding of light work

argues that she has met the second prong of the 12.05C listing, according to *Branham.*

 However, in this case the plaintiff was found able to return to her past work as a janitor, as well as other similar work. Accordingly, *Branham* does not apply. There is no indication in the record that the ALJ's finding that the plaintiff has a capacity for light work exertion is a result of any limiting impairment.

The Fourth Circuit's return-to-work test as articulated in *Branham* is not the sole criteria for determining significance under 12.05C. An impairment also imposes a significant limitation when its effect on the claimant's ability to work "is more than slight or minimal." *Pullen v. Bowen*, 820 F.2d 105, 109 (4th Cir.1987).

Of course, the additional impairment under 12.05C need not of itself be disabling, since that would make the requirement meaningless. *Branham*, 775 F.2d at 1273. But absent the situation, not present here, where the additional impairment limits the claimant's ability to perform past work, the determination of its significance is a factual one, subject to the requirement that it be based on substantial evidence.

Judicial review is limited to a determination as to whether there is substantial evidence to support the Commissioner's final decision. If substantial evidence exists, this court's "inquiry must terminate," and the final decision of the Commissioner must be affirmed. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence, but may be somewhat less than a preponderance." *Laws*, 368 F.2d at 642.

The ALJ carefully reviewed the medical evidence before him and his determination that the plaintiff did not exhibit additional and significant impairment is based on substantial evidence. While the ALJ might have chosen to accept Dr. Steward's opinion over that of Dr. Savage, Dr. Patel or Dr. Hagan, I cannot substitute my judgment for his, and make that determination.[4]

### *IV. Conclusion.*

For the foregoing reasons, the Commissioner's motion for summary judgment will be granted.

An appropriate final judgment will be entered.

---

presumes the ability to perform sedentary work, which primarily involves sitting, lifting no more than 10 pounds at a time, and occasionally lifting or carrying articles like docket files, ledgers, and small tools. *20 C.F.R.* § 416.967(a).

4. The ALJ also determined that Dr. Hagan's opinion, which he accepted, precluded a finding that the plaintiff met the requirements of listings 12.04, 12.05D or 12.06, which involve the presence of other severe or marked mental impairments. (R. at 172–73.) This determination is also based on substantial evidence.