**Alan E. ALDERMAN, Plaintiff,**

**v.**

**Shirley S. CHATER, as Commissioner of Social Security, Defendant.**

**Civil Action No. 3:97–CV–78.**

United States District Court, N.D. West Virginia, Martinsburg Division.

Sept. 23, 1998.

Scott A. Curnutte, Elkins WV, for plaintiff.

Helen Campbell Altmeyer, Wheeling WV, for defendant.

## MEMORANDUM AND ORDER

BROADWATER, District Judge.

This is an action for judicial review of the final administration decision of the Commissioner of Social Security Benefits ("Commissioner") denying the application of the plaintiff, Alan Alderman ("Alderman") for disability insurance benefits (DIB) under the Social Security Act ("Act"), 42 U.S.C. §§ 401–433. This matter is before the Court pursuant to 42 U.S.C. § 405(g).

This case is presently pending awaiting disposition on cross-motions for summary judgment (Documents # 7 and # 8) as presented at a hearing held on June 11, 1998. For the reasons more fully set forth below, the Court **GRANTS** the plaintiff's motion for summary judgment (Document # 8) and **DENIES** the defendant's motion for summary judgment (Document # 7).

### I. STATEMENT OF THE CASE

Alderman applied for DIB twice, initially on July 19, 1993 ("First Application"), and again on March 21, 1994, alleging disability since March 22, 1993 ("Second Application") due to constant low back pain and myoclonus which are involuntary body movements. The Social Security Administration ("Administration") denied both applications at the initial and reconsideration levels. Alderman did not pursue his full administrative remedies on the First Application.

After the Administration denied his Second Application at the initial and reconsideration levels, Alderman requested

a hearing, which was held before the Administrative Law Judge ("ALJ") J. Robert Brown on September 22, 1995. Alderman was represented by counsel. At this hearing, Alderman, his wife, Cynthia Alderman, and Dr. James Ryan, a vocational expert, testified. In a decision dated April 8, 1996, the ALJ found that, while Alderman's back pain and involuntary body movements would prevent him from performing his past relevant jobs as a heavy equipment operator, constituting medium to heavy labor, Alderman retained the residual functional capacity to perform light labor. The ALJ concluded that Alderman was not disabled within the meaning of the Act because he could perform a limited range of unskilled light work existing in significant numbers in the national economy, consistent with Alderman's age, education, work background, medically determinable impairments, and resultant functional limitations.

On August 7, 1997, the Appeals Council denied Alderman's request for review of the ALJ's decision, making it a final decision. Alderman filed this action seeking judicial review of the Appeal Counsel final decision.

## II. STATEMENTS OF THE FACTS

Alderman was born on May 27, 1955 and was almost thirty-nine years old as of the onset of disability and forty-years old at the time of the administrative hearing. Although he completed eight grades of school, Alderman can barely read or write. However, he has attained an actual fourth to fifth grade level of learning. From 1979 to 1982, Alderman performed past relevant work as a mill operator, an unskilled, heavy exertional level type of work. From 1982 to 1983, he did heavy exertional level and unskilled work, including farm work that involved throwing bales of hay onto wagons, and other laboring jobs that involved lifting 100 pound bags of rocks. From 1983 to 1992, Alderman performed semi-skilled, medium exertional level work, such as equipment operator in the con-

struction industry. According to the vocational expert, Alderman's skills are occupationally specific, limited to the operating of heavy equipment, and not readily transferable outside this industry designation.

On August 27, 1985, while at work, Alderman suffered an acute lumbar strain in a bulldozer accident. On June 13, 1986, he underwent back surgery to correct a herniated disc that resulted from his occupational injury. He received physical therapy, pain relievers, and anti-inflammatory medication. The 1986 surgery did not relieve Alderman of the back pain. He continued experiencing back pain after his 1986 back surgery and began experiencing frequent involuntary muscle contractions in 1991. Initially, Alderman's involuntary muscle contractions involved leg jerks in the left lower extremity, progressing in the late 1992 to involve his whole body. A neurological examination performed on June 11, 1993 indicated that Alderman had simultaneous body contractions in the upper and lower extremities and that such contractions got worse when he was in a sitting position. Alderman was intermittently treated for back pain and involuntary muscle contractions. In 1994, Alderman was diagnosed with spinal stenosis at L-4-5 and received multiple bilateral nerve root injections.

In addition to his treatment for back pain and involuntary muscle contractions, Alderman underwent psychological examinations. On October 28, 1993, Stephen Townsend, a licensed psychologist, performed an adult personality battery as part of Alderman's application for disability benefits. During the examinations, Alderman exhibited frequent involuntary muscle contractions. Based on the Wechsler Adult Intelligence Scale–Revised (WAIS–R) test, Alderman received a verbal IQ of 72, a performance IQ of 82, and a full scale IQ of 76. These scores placed Alderman in the borderline range of intellectual ability. A Minnesota Multiphasic Personality Inventory (MMPI) score indicated that Alderman had a mild depres-

sion. On September 14, 1998, Dr. Bradley Soule, a psychiatrist, diagnosed Alderman with a major depressive disorder of moderate severity.

According to the record, as recently as July 31, 1995, Alderman was receiving medication for back injury, back pain, and involuntary muscle contractions.

### III. STANDARD OF REVIEW

In reviewing a final decision of no disability by the Commissioner[1], the Court must determine whether the Commissioner's decision is supported by substantial evidence, per 42 U.S.C. § 405(g), and whether the correct law was applied. *Hays v. Sullivan*, 907 F.2d 1453 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). Elaborating on this definition, the Fourth Circuit has stated that the phrase "supported by substantial evidence" consists of evidence "of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Hays*, 907 F.2d at 1456 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

In reviewing the ALJ's decision, this Court must also consider whether the ALJ applied the proper standards of law in reaching the decision. As explained in *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir.1987), "a factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *See also*, 42 U.S.C. § 405(g); *Knox v. Finch*, 427 F.2d 919, 920 (5th Cir.1970).

### IV. DISCUSSION

Alderman offers two arguments in support of his contention that he is disabled within the meaning of the Act: 1) his impairments meet or equal 20 C.F.R. Pt. 404, Subpart P, App. 1, § 12.05(C) ("12 .05(C)"), mental retardation and autism[2]; and, 2) he lacks the residual functional capacity to perform substantial gainful activity. Even though, Alderman's impairments, when considered individually, do not meet or equal 20 C.F.R. Pt. 404, Subpart P, App. 1, § 12.05(C), the combined effect of his impairments renders him disabled within the meaning of the Act. Moreover, the Court concludes that the record shows that due to the combined effects of Alderman's impairments, he lacks the residual functional capacity to perform substantial gainful activity.

Counsel for Alderman contends that the ALJ failed to address whether Alderman's claim satisfied the 12.05(C) requirements. These requirements are met when a claimant has a "valid verbal, performance, or full IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limita-

1. In order to determine whether a claimant is disabled, the ALJ must ask five questions sequentially: 1) whether the claimant is engaged in substantial gainful activity, 2) whether the claimant has a severe impairment, 3) whether the claimant has an impairment which meets or equals a condition contained within the Social Security Administration's official listing of impairments (at 20 C.F.R. Pt. 404, Subpart P, App. 1), 4) whether the claimant has an impairment which prevents past relevant work, and 5) whether the claimant's impairments prevent him from any substantial gainful employment. An affirmative answer to question 1 or negative answers to questions 2 or 4 result in a determination of no disability. Affirmative answers to questions 3 or 5 establish disability. 20 C.F.R. Section 404.1520, *Hines v. Bowen*, 872 F.2d 56 (4th Cir.1989).

2. Section 12.05 Mental Retardation reads in part: "mental retardation refers to a significantly subaverage **general** intellectual functioning with deficits in adaptative behavior.... (Note: the scores specified below refer to those obtained on the WAIS, and are **used only for reference purposes.**) ... The required level of severity for this disorder is met when the requirements in ... (C) are satisfied." (emphasis added).

tion of function." 20 C.F.R. Pt. 404, Subpart P, App. 1, § 12.05(C) [3].

Defendant, in its response to plaintiff's brief in support of his motion for summary judgment, argues that the evidence of record does not support Alderman's assertions that he meets the 12.05(C) requirements. Defendant asserts that there is no objective evidence of record indicating that Alderman has an I.Q. of 60 through 70. Defendant is making a literal reading of Section 12.05(C), disregarding the language in Section 12.05. This section states that the scores specified in § 12.05(C) should be used "only for reference purposes." 20 C.F.R. Pt. 404, Subpart P, App. 1, § 12.05. Alderman correctly argues that the significant limitation under Section 112.05(C) need not be disabling in and of itself because "if the plaintiff's physical impairment were required to be independently disabling, Section 12.05(C) would be rendered meaningless." *Branham v. Heckler*, 775 F.2d 1271, 1273 (4th Cir. 1985).

■ In defining mental retardation, Section 12.05 qualifies the expression "intellectual functioning" with the word "general." Thus, the I.Q. requirements of Section 12.05(C) should be used as a general indication of mental functioning, which, together with a physical or mental impairment, imposes "additional and significant work-related limitation of function." Defendant concedes, though, that Alderman's I.Q. scores place him in the borderline of intellectual functioning and that he has severe myoclonus, chronic low back pain, and depression, impairments that seemingly impose additional and significant limitation of work-related function.

The Fourth Circuit has held that an illness or injury imposes a significant limitation of function when its effects on the claimant's ability to work is more than slight or minimal. *Pullen v. Bowen*, 820 F.2d 105 (4th Cir., 1987). The record is

clear that Alderman's combination of mental and physical impairments is more than slight or minimal. Alderman has been evaluated by three mental health professionals, Dr. Wise, Dr. Lewis, and Dr. Soule, who consistently diagnosed depression with associated anxiety and work-limitation of function. For instance, Dr. Soule's rating of impairment severity characterizes Alderman's degree of limitation as:

> 1) marked restriction of activities of daily living; 2) marked difficulties in maintaining social functioning; 3) constant deficiencies of concentrations, persistence or pace resulting in failure to complete tasks in a timely manner (in work setting or elsewhere); and 4) continuous episodes of deterioration or decompensation in work or work-related settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).

Joint App. at 343.

Dr. Soule concluded that Alderman suffers from a major depressive disorder, that he is disabled from substantial gainful employment and probably is going to be disabled for the remainder of his adult life.

■ The requirement of a work-related limitation of function of Section 12.05(C) is met when a "claimant could not do his past relevant work." *Branham*, 775 F.2d at 1273 (citing *Rainey v. Heckler*, 770 F.2d 408 (4th Cir.1985)). *See also, Flowers v. U.S. Dep't of Health & Human Serv.*, 904 F.2d 211, 214 (4th Cir.1990). The ALJ found that because Alderman had a history of chronic back pain, myoclonus, major depressive disorder of moderate severity, and borderline range of intelligence, he is precluded from engaging in any of his past relevant work activities. Therefore, Alderman meets the work-related limitation

---

3. 20 C.F.R. Pt. 404, Subpart P, App. 1, § 12.05(C) should be read in conjunction with Section 12.05.

**372**

of function under Section 12.05(C) because he cannot return to his past work as a heavy equipment operator. In addition, and as explained by the vocational expert, Alderman's skills as a heavy equipment operator are occupationally specific and not readily transferable. Thus, Alderman's restrictions from performing his prior relevant work, as corroborated by the ALJ and the vocational expert, are enough to establish the "significant work-related limitation of function" requirement of Section 12.05(C). *Luckey v. U.S. Dep't of Health & Human Serv.*, 890 F.2d 666 (4th Cir.1989) (citing *Branham*, 775 F.2d at 1273).

■ Congress explicitly requires that "the combined effect of all the individual's impairments [be considered] without regard to whether any such impairment if considered separately" would be sufficiently severe. 42 U.S.C. § 423(d)(2)(C) (1982 and Supp.1988). *See also, Hines*, 872 F.2d at 56. In *Reichenbach v. Heckler*, 808 F.2d 309 (4th Cir.1985), the Fourth Circuit held that in determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.

When faced with a combination of multiple physical and mental impairments, the Commissioner should "consider the combined effect of all ... impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523. In this case, the Commissioner failed to consider the combined effect of Alderman's physical and mental impairments that renders him disabled within the meaning of the Act. The record plainly indicates that Alderman presents a "medically severe combination of impairments" and that the Commissioner did not consider such combination "throughout the disability determination process." *Id.*

In *Hines*, the Fourth Circuit held that the ALJ's failure to provide "a particularized finding on the effect of the combination of impairments" was reversible error. *Hines*, 872 F.2d at 59. The ALJ's conclusion that Alderman's various medical difficulties are not accompanied by sufficient medical evidence is erroneous and is not supported by substantial evidence.

### V. CONCLUSIONS

For the reasons expressed herein, the Court holds that the Commissioner's findings and conclusions are **NOT** supported by substantial evidence. Accordingly, the Court **REVERSES** the Commissioner's decision. Therefore, it is **ORDERED**

1. That the plaintiff's motion for summary judgment (Document #8) be **GRANTED;**

2. That the defendant's motion for summary judgment (Document #7) be **DENIED;**

3. That this case be **DISMISSED** from the active docket of this Court.

The Clerk is directed to transmit a true copy of this Order to counsel of record herein.