Emma Jane **PULLEN,**
**Plaintiff-Appellant,**

v.

Otis R. **BOWEN, Secretary of Health
and Human Services,
Defendant-Appellee.**

No. 86–1668.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 4, 1987.

Decided June 2, 1987.

Carter B. Foulds, Falls Church, Va., Rappahannock Legal Services, Inc., for plaintiff-appellant.

Deborah Fitzgerald, Asst. Regional Counsel, Philadelphia, Pa., Dept. of Health & Human Services (Beverly Dennis, III, Chief Counsel, Region III, Philadelphia, Pa., Charlotte Hardnett, Supervisory Asst. Regional Counsel, Henry E. Hudson, U.S. Atty., Arlington, Va., Paula M. Potoczak, Asst. U.S. Atty., Washington, D.C., on brief), for defendant-appellee.

Before PHILLIPS and WILKINSON, Circuit Judges, and SPENCER, United States District Judge for the Eastern District of Virginia, sitting by designation.

WILKINSON, Circuit Judge:

In November 1983, appellant Pullen applied for various disability benefits. The Secretary denied her claims, but the district court partially reversed, awarding disabled widow insurance benefits and Supplemental Security Income. Pullen subsequently sought an award of attorney's fees under the Equal Access to Justice Act. The district court denied her motion.

We affirm.

I.

Emma Pullen is a 55 year old woman with a limited education. She has a Verbal IQ of 72, a Performance IQ of 62, and a Full Scale IQ of 66. She has had only one eye since childhood and now suffers from some hearing loss in one ear. Despite these limitations, Pullen has worked as an apple grader, a waitress, a maid, and a landscaper. While working as a landscaper in August 1978, she passed out from heat stroke. She returned to work a week later, but felt ill and fainted. Pullen has not worked regularly since that time. Accord-

ing to appellant, she has been unable to work because she suffers from anxiety and panic attacks.

Pullen applied for disability insurance benefits, disabled widow insurance benefits, and Supplemental Security Income. An ALJ denied the claim for disability insurance benefits because Pullen's earnings record did not qualify her for disability insured status. 20 C.F.R. §§ 404.130–31. The district court affirmed.

The ALJ also denied Pullen's claims for disabled widow benefits and Supplemental Security Income. Under SSA regulations, Pullen was entitled to both types of benefits if she suffered from a disability found in the Listing of Impairments. 20 C.F.R. § 404.1578; 20 C.F.R. § 416.920(d). One of the Listed Impairments, Section 12.05 C, provides that an applicant is disabled if she has "a verbal, performance, or full scale IQ of 60 to 69 inclusive and a physical or other mental impairment imposing additional and significant work-related limitation of function." 20 C.F.R. Part 404, Subpart P, App. 1.

The ALJ did not specifically address whether Pullen's claim satisfied § 12.05 C. The ALJ's decision simply stated that "the record does not establish that claimant has any impairment or combination of impairments which meet or equal a listed impairment in Appendix 1." Based on this finding, the ALJ denied the claim for disabled widow benefits and advanced to the next step in the sequential determination of an SSI claim. After finding that Pullen could perform her past relevant work, the ALJ denied her SSI claim under 20 C.F.R. § 416.920(e). The Appeals Council adopted this decision. Pullen appealed.

The district court found that Pullen was disabled under § 12.05 C because her anxiety attacks did amount to an additional and significant limitation. The court reversed

the agency, finding that the denial of SSI and disabled widow's benefits was not supported by substantial evidence. After receiving her benefits, Pullen moved for an award of attorney's fees under the Equal Access to Justice Act.* The district court denied her request.

### III.

Under the EAJA, a prevailing civil litigant is entitled to attorney's fees if the "position of the United States" was not "substantially justified." 28 U.S.C. § 2412(d)(1)(A). The Act aims to penalize unreasonable behavior on the part of the government without impairing the vigor and flexibility of its litigating position. Relying on the 1985 Amendments to the Act, Pullen contends that, absent "extraordinary, special circumstances", the position of the United States cannot be substantially justified because the denial of benefits was reversed for lack of substantial evidence. The 1985 Amendments, however, did not implement such an exacting standard.

This court has previously held that the "position of the United States" referred only to the government's position during litigation and that this position was "substantially justified" if reasonable in fact and law. *Guthrie v. Schweiker*, 718 F.2d 104, 108 (4th Cir.1983); *Tyler Business Services v. NLRB*, 695 F.2d 73, 75 (4th Cir.1982). In the re-enactment and amendment of the EAJA in 1985, Congress modified the first portion of these decisions by expanding the "position of the United States" to include the agency action that forms the basis of the suit. 28 U.S.C. § 2412(d)(1)(B) (West Supp.1986).

■ According to Pullen, Congress also modified the second part of *Tyler* and *Guthrie* to provide that, absent extraordi-

---

\* The Equal Access to Justice Act provides in relevant part that "except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for ju-

dicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A) (West Supp.1986).

nary circumstances, an agency decision is not substantially justified if it is reversed for a lack of substantial evidence. Unlike the modification of "position of the United States", however, Congress never amended the EAJA to provide a new statutory definition of "substantially justified." To support her approach, Pullen relies solely on the following section of the House Judiciary Committee Report:

Agency action found to be arbitrary or capricious or unsupported by substantial evidence is virtually certain not to have been substantially justified under the Act. Only the most extraordinary special circumstances could permit such an action to be found to be substantially justified under the Act.

H.R.Rep. No. 99–120, 99th Cong., 1st Sess. 9–10 *reprinted in* 1985 U.S.Code Cong. & Ad.News, 132, 138.

Congress never intended to adopt this standard. The only support for such a rule is found in a few sentences in the middle of a House Report. If Congress had wanted this broad standard, which exceeds any judicial interpretation of the EAJA, it would have amended the statute, as it did in modifying the "position of the United States." The Supreme Court has recently admonished that "going behind the plain language of a statute in search of a possible contrary congressional intent is a step to be taken cautiously even under the best of circumstances." *United States v. Locke*, 471 U.S. 84, 95–96, 105 S.Ct. 1785, 1793, 85 L.Ed.2d 64 (1985).

Not only does Pullen's position fail to find support in the statute, but the "extraordinary circumstances" standard was severely criticized by several Congressmen. Representative Kindness, a co-sponsor of the bill and a member of the Judiciary Committee, called that section of the House Report a "gratuitously authoritarian overstatement" that "should not be interpreted to be position of the committee." 131 Cong.Rec. H4763 (daily ed. June 24, 1985). Representative Kastenmeier, chairman of the reporting subcommittee, agreed with this position and added that "substantial justification is a different standard than

the substantial evidence standard. The Government may still prove that the position it took was substantially justified." *Id.* Senator Thurmond, chairman of the Senate Judiciary Committee, concluded that "there could be cases .where an agency loses on the merits", but "no attorney fees would be awarded because the Government was substantially justified." 131 Cong. Rec. S.9993 (daily ed. July 24, 1985).

No circuit dealing with the post–1985 EAJA has adopted appellant's position. The courts, however, have adopted different approaches to the 1985 Amendments. Two circuits have declined to alter their previous standard and continue to hold that substantial justification is more than "merely reasonable". *Lee v. Johnson*, 799 F.2d 31, 38 (3rd Cir.1986); *Herron v. Bowen*, 788 F.2d 1127, 1130 (5th Cir.1986). Other circuits now hold that substantial justification means "clearly reasonable", *Gavette v. OPM* 785 F.2d 1568, 1579 (Fed. Cir.1986) or "clearly reasonable, well founded in law and fact, solid though not necessarily correct." *United States v. 1,378.65 Acres of Land*, 794 F.2d 1313, 1318 (8th Cir.1986.)

■ In practice, any difference between the "reasonable in fact and law", the "more than merely reasonable", and the "clearly reasonable" standards appears more semantic than real. In light of these insubstantial differences and the absence of congressional intent to impose a new definition of substantial justification, we adhere to the *Tyler* and *Guthrie* standard of "reasonable in fact and law." *See also Anderson v. Heckler*, 756 F.2d 1011, 1013 (4th Cir.1985); *Smith v. Heckler*, 739 F.2d 144, 146 (4th Cir.1984). Under this approach, fee shifting is not automatic and the reversal of an agency for lack of substantial evidence does not raise a presumption that the agency was not substantially justified. *Guthrie*, 718 F.2d at 108, *Tyler*, 695 F.2d at 75. When reversed under the substantial evidence standard, however, the government bears the burden of showing that the denial of benefits was, indeed, substantially justified. *Campbell v. Bowen*, 800 F.2d 1247, 1249 (4th Cir.1986).

## IV.

If the Secretary was reasonable in finding that Pullen's problems did not amount to "additional and significant work-related limitations", she is not entitled to attorney fees. 20 C.F.R. Part 404, Subpart P, App. 1, § 12.05. The SSA regulations do not define a significant limitation, but the impairment does not have to be disabling in itself. *Branham v. Heckler*, 775 F.2d 1271, 1273 (4th Cir.1985). An illness or injury imposes a significant limitation when its effect on the claimant's ability to work is more than slight or minimal. *Cook v. Bowen*, 797 F.2d 687, 690 (8th Cir.1986); *Nieves v. Sec. of HHS*, 775 F.2d 12, 14 (1st Cir.1985).

█ When determining whether an agency denial of benefits was substantially justified, this circuit employs a *de novo* standard of review. *Hicks v. Heckler*, 756 F.2d 1022, 1024–25 (4th Cir.1985). The ALJ did not transgress the EAJA standard in finding that Pullen's hearing problem and loss of an eye did not impose significant work-related limitations. As the ALJ noted, "she was able to understand normal conversational tones well and she was observed during the hearing to be able to understand and follow normal conversational tones without difficulty." Pullen lost her eye when she was eight, but was still able to obtain a drivers license and work for many years with this condition. Dr. Richard Quaintance, Pullen's treating physician since 1955, reported in 1981 that Pullen's loss of her right eye caused little occupational impairment. He noted her general physical condition to be satisfactory.

█ The Secretary could reasonably have found that Pullen's panic and anxiety attacks did not impose an additional and significant work-related limitation. The precise nature of Pullen's problem proved elusive. By far, the prevailing diagnosis was anxiety. As the ALJ noted, the various treating physicians concluded that Pullen was somewhat anxious or had a mild anxiety reaction or was suffering from anxiety.

In an attempt to find the cause of her fainting spells, Pullen underwent a complete neurological exam, but the doctor found that her problems were attributable to anxiety, hyperventilation, and muscle tension headaches. In June 1982, during an examination for possible heart problems, the reporting physician found no medical problems and concluded that Pullen's complaints stemmed from her attempt to obtain medication and disability payments. After being evaluated by the Culpeper Mental Health Clinic in 1982, Pullen was diagnosed as suffering from a psychogenic pain disorder, with symptoms of faintness, dizziness, and heart palpitations. Of course, anxiety and panic attacks may amount to a significant limitation on an individual's ability to work. Under these circumstances, however, the ALJ did not transgress the "substantial justification" standard in concluding that Pullen's anxiety did not amount to an additional and significant limitation.

Regardless of the severity of her attacks, Pullen apparently did not suffer them very often. Her personal physician reported that the attacks occurred only two or three times a year. During a visit for an anxiety attack at Culpeper Hospital in November 1983, Pullen stated that it was her first fainting attack in a year. The attacks also do not appear to be of undue severity. Pullen was able to engage in such daily activities as attending a social club, visiting nearby relatives, shopping, and doing light housework. The ALJ found that "treatment for these problems is complicated by the claimant's lack of motivation for a cure and for employment."

In evaluating Pullen's claims, the ALJ followed the proper sequential process, proceeding from an inquiry into the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, App. 1, to a determination of whether Pullen could perform her past relevant work. 20 C.F.R. § 404.1520(e). Pullen's case was not an easy one. It required government attorneys and an administrative law judge to make difficult judgments on the evidence. We agree with the district court that an award of benefits to Pullen was appropriate. We likewise agree

with the district court that its reversal on the merits did not mandate an award of attorney's fees.

AFFIRMED.