**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**CHARLES GYURMAN LAND &
CATTLE COMPANY, et al.,
Defendants–Appellees,**

**5,063.17 Acres of Land, More or Less,
Situate in Las Animas County, Colorado Henry Wacker; Gerald Dixon; Veronica Goodrich; Judy Marie Wood;
Kathleen Ann Velles, et al., Defendants.**

No. 86–1291.

United States Court of Appeals,
Tenth Circuit.

Dec. 30, 1987.

Maria A. Iizuka, Dept. of Justice Land & Natural Resources Div., Washington, D.C. (F. Henry Habicht II, Asst. Atty. Gen., Washington, D.C.; Robert N. Miller, U.S. Atty. and James Cage, Asst. U.S. Atty., Denver, Colo., Thomas P. Carolan and Dirk D. Snel, Dept. of Justice Land & Natural Resources Div., Washington, D.C., with her, on the brief), for plaintiff-appellant.

Marlin D. Opperman (William M. Schell with him, on the brief), of Opperman & Associates, P.C., Denver, Colo., for defendants-appellees.

Before McKAY, SEYMOUR and BALDOCK, Circuit Judges.

SEYMOUR, Circuit Judge.

Charles Gyurman Land & Cattle Co. (Gyurman) was awarded $50,000 in attorney's fees as a prevailing party under the Equal Access to Justice Act (EAJA) in a condemnation case. The United States appeals, arguing that an improper standard was used to determine whether the government's position was substantially justified. We reverse and remand.

## I.

The EAJA provides, in part, that

"a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action ... brought by or against the United States ..., unless the court finds that the position of the United States was substantially justified...."

28 U.S.C. § 2412(d)(1)(A) (Supp. III 1985). In eminent domain cases, where frequently the sole issue is the value of the land condemned, courts have had some difficulty establishing a test for determining which party has prevailed and whether the government's position was substantially justified. Congress has now amended the EAJA and set a mathematical prevailing party standard. *Id.* § 2412(d)(2)(H) (Supp. III 1985).[1]

---

1. Section 2412(d)(2)(H) provides that "'prevailing party', in the case of eminent domain proceedings, means a party who ob-

This case arose before that amendment. The district court adopted the test now established by the amendment, which was then being considered, as "a sensible and fair approach" to determining which party in a condemnation case had prevailed in cases arising before the amendment. *United States v. 5,063.17 Acres of Land*, 607 F.Supp. 311, 314–15 (D.Colo.1985). The district court found Gyurman to be the prevailing party in this case, and that determination is not contested on appeal.

The district court then considered whether the government's position was substantially justified. It rejected tests used by other circuits because it concluded that condemnation cases were more suited to an objective, quantitative test. *Id.* at 315. The court therefore adopted the same definition for substantial justification that it had used for prevailing party. Under this standard, by definition the government's position was not substantially justified because it was not the prevailing party.

## II.

The proper test for determining whether the government's position is substantially justified under the EAJA is an issue of law. We thus review the District Court's conclusion *de novo*. *United States v. 2,116 Boxes of Boned Beef*, 726 F.2d 1481, 1486 (10th Cir.), *cert. denied*, 469 U.S. 825, 105 S.Ct. 105, 83 L.Ed.2d 49 (1984).

### A. Standard of Review

Prior to the 1985 amendments to the EAJA, our standard of review for determinations of substantial justification was reasonableness in both law and fact. *Boned Beef*, 726 F.2d at 1486. Other circuits applied similar standards. *See, e.g., Pullen v. Bowen*, 820 F.2d 105, 108 (4th Cir.1987); *Russell v. National Mediation Bd.*, 775 F.2d 1284, 1288 (5th Cir.1985); *see also* H.R. Rep. 1418, 96th Cong., 2d Sess. 13 (1980), *reprinted in* 1980 U.S.Code Cong.

& Admin.News 4953, 4992 (reasonable basis in law and fact).

A number of circuits have since reconsidered the appropriateness of their standard in light of the 1985 amendments to the Act. Their decisions are not in accord. Two circuits have adopted a "clearly" reasonable standard. *United States v. 1,378.65 Acres of Land*, 794 F.2d 1313, 1318 (8th Cir.1986) ("[the government's] position must be clearly reasonable, well founded in law and fact, solid though not necessarily correct"); *Gavette v. Office of Personnel Management*, 785 F.2d 1568, 1579 (Fed.Cir. 1986) (en banc) ("the Government [must] show that it was *clearly* reasonable in asserting its position ... in view of the law and the facts"); *see also Lee v. Johnson*, 799 F.2d 31, 41 (3d Cir.1986) (Rosenn, J., concurring). One circuit has held that its pre-amendment standard was consistent with the "more than ... reasonable" standard required by the amendments. *Id.* at 38 n. 7. Finally, two circuits have declined to adopt a higher standard. *Pullen*, 820 F.2d at 108 (describing differences among various standards as "more semantic than real" and adhering to "reasonable in fact and law" standard); *Russell*, 775 F.2d at 1288–89 (characterizing legislative history as conflicting and impossible to harmonize and adhering to reasonableness standard).

The 1985 amendments made no changes to the statutory language that are relevant to the question of the proper standard of review for determinations of substantial justification. However, the House Report, which is the most authoritative part of the legislative history available to us,[2] reads in relevant part:

"Another problem which has developed in the implementation of the Act has been the fact that courts have been divided on the meaning of 'substantial justification.' Several courts have held correctly that 'substantial justification' means more than merely reasonable.

---

tains a final judgment (other than by settlement), exclusive of interest, the amount of which is at least as close to the highest valuation of the property involved that is attested to at trial on behalf of the property owner as it is to the highest valuation of the property involved that is attested to at trial on behalf of the Government."

**2.** No Senate or Conference Report was submitted on the bill in question.

Because in 1980 Congress rejected a standard of 'reasonably justified' in favor of 'substantially justified,' the test must be more than mere reasonableness."

H.R.Rep. 120, Part I, 99th Cong., 2d Sess. 9 (1985) (footnote omitted), *reprinted in* 1985 Code Cong. & Admin.News 132, 138.

■ We are inclined to agree with the Fourth Circuit that the difference between the various definitions of "substantial justification" is merely one of semantics. *See Pullen,* 820 F.2d at 108. We view our test of "reasonableness" as embodying more than "merely reasonable," as articulated in the quoted portion of the House Report. We believe the district courts in this circuit will apply the substantial justification test properly whether it is articulated as requiring the government's position to be "reasonable" or "clearly reasonable."

### B. The Test for "Substantial Justification"

The EAJA is a waiver of sovereign immunity and it therefore must be strictly construed, *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 685, 103 S.Ct. 3274, 3278, 77 L.Ed.2d 938 (1983). The so-called American rule, moreover, is that parties pay their own attorney's fees, absent certain common-law and statutory exceptions. *See, e.g.,* H.R.Rep. 1418, 96th Cong., 2d Sess. 8 (1980), *reprinted in* 1980 U.S.Code Cong. & Admin.News 4953, 4986–87. We must thus read the language of the statute closely to determine under what circumstances Congress was willing to require the government to pay the attorney's fees of other parties.

The statutory language sets out a two-part test. The court must first determine whether the non-government party prevailed. If so, that party "shall" be awarded fees *unless* the government's position was substantially justified or other special circumstances would make an award unjust. 28 U.S.C. § 2412(d)(1)(A). A three-way classification is thus envisioned: 1) the non-government party prevails and the government's position is not substantially justified, 2) the non-government party pre-

vails and the government's position is substantially justified, and 3) the non-government party does not prevail. Only in the first of these cases "shall" the court award attorney's fees. Conversely, the court may not award fees in the second and third cases. This follows from the mandatory language used in the statute and from the government's sovereign immunity where that language does not apply.

The classification above is derived directly from the statute. It is also supported by the legislative history of the EAJA. House Report 96–1418 expressly states that "[t]he standard ... should not be read to raise a presumption that the Government position was not substantially justified, simply because it lost the case." H.R.Rep. 1418, 96th Cong., 2d Sess. 11 (1980), *reprinted in* 1980 U.S. Code Cong. & Admin.News 4953, 4990. This is precisely what the district court's definition does: if the government loses, it pays. This approach effectively changes the classification system for condemnation cases to one governed by only one question: whether the non-government party prevailed. This result is clearly contrary to Congress' intent. To make the substantial justification determination, therefore, we must establish a test other than the one used to determine which party has prevailed.

Because the sole issue at trial in condemnation proceedings is the very narrow factual issue of valuation, a particularized test is needed for such cases. The test must be workable in light of the statutory command that the issue be decided upon the record already available to the district court. 28 U.S.C.A. § 2412(d)(1)(B) (West.Supp.1987).

Factors that have been considered by other circuits in making substantial justification determinations include the amount of the jury award, the deposit made by the government, the initial offer made by the government, the appraisals upon which the government relied, the government's position on valuation at trial, and other awards in the area. *See United States v. 1,378.65 Acres of Land,* 794 F.2d 1313, 1318 (8th Cir.1986); *United States v. 640.00 Acres of Land,* 756 F.2d 842, 850 (11th Cir.1985);

*United States v. 341.45 Acres of Land,* 751 F.2d 924, 940–41 (8th Cir.1984), *vacated,* 786 F.2d 1168 (8th Cir.1986); *United States v. 101.80 Acres of Land,* 716 F.2d 714, 728 (9th Cir.1983). Unfortunately, none of these factors are reliable indicators of the land's actual value. Awards are unreliable because they are almost always some dollar value between the government's and the landowner's claims of value,[3] which are themselves unreliable because they rely on appraisals which are very flexible. In turn, the government's offer and position at trial are generally based on its (generally low) appraisals. Finally, the deposit is merely the government's "estimated compensation"; it may not be used as evidence at trial of the land's value, *341.45 Acres,* 751 F.2d at 940 n. 12, and is therefore not part of the record.

The Ninth Circuit, in an opinion that addressed the question only cursorily, upheld a determination of lack of substantial justification under a reasonableness standard because "the government's original deposit was wholly inadequate, representing only a fraction of the true value of the easement condemned as found by the jury." *101.80 Acres,* 716 F.2d at 728. This "jury award vs. deposit" approach has been rejected by a subsequent court in recognition of the lack of meaning attributable to the deposit. *341.45 Acres,* 751 F.2d at 940 n. 12. Neither party in this case argues for this standard.

The Eighth Circuit held that the substantial justification determination should be made by looking to the totality of the circumstances. *Id.* at 940.[4] The circumstances listed are primarily the reasonableness of the government's appraisals and whether its offer and position on valuation at trial were consistent with those appraisals. The reasonableness of the government's appraisals is to be determined by considering the qualifications and possible conflict of interests of the appraisers and the factual basis for their appraisals. The appraisal/offer/position-at-trial comparison is only moderately useful, as these factors will presumably be consistent in most cases. The comparison would be most helpful if landowners could show at trial whether the government had gotten multiple appraisals and what they were. In most cases that will not be possible, however, as litigants generally do not have access to government appraisals in condemnation cases other than those the government chooses to use at trial. *See, e.g., Hoover v. United States,* 611 F.2d 1132, 1138–42 (5th Cir. 1980); Fed.R.Civ.P. 24(b) advisory committee note, 48 F.R.D. 487, 503–05.

Finally, the Eleventh Circuit requires a determination "of whether the government should have made greater efforts to settle the case before deciding to litigate." *640.00 Acres,* 756 F.2d at 850. The district court is to

"explore what offers were made by the government to the landowners prior to trial, whether the price per acre offered was comparable to other awards being made on similar tracts in the area at that time, whether the government's appraisal of the land which formed the basis of the offer was by a neutral and impartial expert appraiser or by one regularly employed by the government, whether the appraisal was based on sound comparables, and such other facts that may be presented by the parties, which will illuminate the issue of the good faith of the government in trying to reconcile the dispute prior to subjecting the landowners to litigation."

*Id.* While we are not sure that it is possible on the record before the district court for it to judge whether the government ought to have tried harder to settle, the factors listed above all seem to be fairly

---

3. "[Q]uite often the jury or commission will follow neither parties' evidence or expert witnesses and instead award what is essentially a compromise amount higher than the government's valuation but lower than the property owner's." *341.45 Acres,* 751 F.2d at 937 (*quoted in United States v. 5,063.17 Acres of Land,* 607 F.Supp. 311 (D.Colo.1985)).

4. *341.45 Acres* was vacated without explanation in 1986. 786 F.2d 1168 (8th Cir.1986). Its holding was reaffirmed, however, in *1,378.65 Acres,* 794 F.2d at 1318–19.

objective and useful when considered to-gether.

We therefore instruct district courts to determine whether the government's position was substantially justified based on the totality of the circumstances, as reflected in the record before the court. Such circumstances include:

1) the reasonableness and reliability of the government's appraisals introduced into evidence, based on the

a) qualifications of the appraiser

b) impartiality or lack thereof on the part of the appraiser

c) factual basis of the appraisal; specifically, the reasons why the appraisal differs from that of the landowner

d) awards and sales of similar property in the area at the time in question,

2) a comparison of the government's appraisal, the offer made, and proof of valuation at trial, and

3) any other relevant evidence.

We remand this case for determination of whether the government's position was substantially justified under this test.

REVERSED AND REMANDED.