**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 29, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

MELISSA LEIGH HARRELL,
Unknown Owner; DONALD
HARRELL, and his Wife, Maryana N.
Harrell; GEORGE THOMPSON, III,
and his Wife Betty Thompson;
CLAIRE G. MEADOR; JACK
GULLAHORN, and his Wife Patti
Gullahorn; EDWARD (BUBBA)
DEWAY SPEARS, Personal
Representative of the Estate of Lois D.
Spears, deceased; RONALD J.
HARRELL; DEBBIE HARRELL
EVANS, Independent Co-executor of
the Estate of Joab B. Harrell, Jr.,
Deceased, and Estate of Marie S.
Harrell, Deceased,

      Defendants-Appellants,

and

99,223.7238 ACRES OF LAND, more
or less in Sandoval and Rio Arriba
Counties, New Mexico; MAGMA
POWER COMPANY, a Nevada
Corporation - Unknown Owner;
ERNESTINE BIRDSEY PHINNEY;
ANN TEMESI, Unknown Owner;
JAMES P. DUNIGAN, JBD Trust,

No. 10-2153

TFP Trust, WRD Trust, JAP Security Trust - unknown owners; PUBLIC SERVICE COMPANY OF NEW MEXICO, Unknown Owner; SANDOVAL COUNTY, Unknown Owner - Attn: Lorraine Dominguez, Treasurer; RIO ARRIBA COUNTY, Unknown Owner - Attn: Livia Olguin, Treasurer; STATE OF NEW MEXICO TAXATION AND REVENUE DEPARTMENT; GEOPRODUCTS OF NEW MEXICO, INC., Gregory J. Nibert, Registered Agent,

Defendants.

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. No. 2:06-CV-00933-RB-RHS)**

Submitted on the briefs:[*]

Andrew J. Cloutier, James M. Hudson, Lucas M. Williams of Hinkle, Hensley, Shanor and Martin, L.L.P., Roswell, New Mexico, for Defendants-Appellants.

Ignacia S. Moreno, Assistant Attorney General, Kristin R. Muenzen, Jeffrey M. Tapick, Brian C. Toth, Attorneys, U.S. Department of Justice, Environment and Natural Resources Division, Washington, D.C., for Plaintiff-Appellee.

Before **HOLMES** and **McKAY**, Circuit Judges, and **PORFILIO**, Senior Circuit Judge.

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

-2-

**McKAY**, Circuit Judge.

This appeal asks us to consider whether the defendant-appellant property owners were the "prevailing party" in this case, as that term is defined for eminent domain proceedings under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(2)(H). The district court determined that appellants were not the prevailing party, even though the court had awarded them a judgment for approximately $3.8 million, and the court therefore denied their motion for approximately $2 million in attorney's fees and costs under EAJA.

We affirm the district court's order denying defendants' motion for attorney's fees, even though the defendant landowners won the judgment, and even though they won $3.8 million—much more than the government ever offered them for their property. Although this result may seem unfair under the circumstances of this case, set out below, the language defining "prevailing party" in § 2412(d)(2)(H) is clear both on its face and in light of its legislative history, and it is clear that defendants cannot qualify as the prevailing party under Tenth Circuit law.

We have already held, in the context of § 2412(d)(2)(H), that "[t]he EAJA is a waiver of sovereign immunity and it therefore must be strictly construed" when we consider "under what circumstances Congress was willing to require the government to pay the attorney's fees of other parties" under the "mathematical

prevailing party standard" set out in § 2412(d)(2)(H). *United States v. Charles Gyurman Land & Cattle Co.*, 836 F.2d 480, 481, 483 (10th Cir. 1987). We have also held, in the context of § 2412(d)(2)(H), that we are not free to create exceptions to Congress' unambiguous statutory language, even to prevent manifest injustice. *United States v. 1002.35 Acres of Land*, 942 F.2d 733, 735-37 (10th Cir. 1991).

I.  Statutory Definition of "Prevailing Party" in Eminent Domain Proceedings

Congress has defined the following mathematical formula for determining whether a landowner who obtained the judgment in eminent domain proceedings is a prevailing party:

> [A] "prevailing party", in the case of eminent domain proceedings, means a party who obtains a final judgment (other than by settlement), exclusive of interest, the amount of which is at least as close to the highest valuation of the property involved that is attested to at trial on behalf of the property owner as it is to the highest valuation of the property involved that is attested to at trial on behalf of the Government[.]

§ 2412(d)(2)(H). Congress added this subparagraph to EAJA in 1985 to clarify that EAJA does apply to eminent domain proceedings (an issue over which the circuits had split) and to provide the definition for "prevailing party" for eminent domain proceedings.

Congress explained its reasons for adding subparagraph (d)(2)(H) to EAJA in the House Report, which clearly shows Congress' intent that a district court

-4-

make its decision about "prevailing party" status in an eminent domain proceeding based on the testimony at trial:

> Under this amendment, a party would be regarded as a prevailing party when the amount it is awarded by the court lies at least halfway between **the highest amount testified to** on behalf of the government and **the highest amount testified to** on behalf of the opposing party. **In other words, the prevailing party is the one whose testimony in court is closer to the award.** If the award is exactly in the middle, it gives the benefit to the property owner.
> **This amendment applies only to values testified to in court.**

H.R. Rep. 99-120, at 18, 1985 U.S.C.C.A.N. 132, at 147 ("all caps" style omitted) (emphasis added).

Congress also explained that its definition of "prevailing party" provided an incentive for the parties to an eminent domain proceeding to be reasonable in their valuations:

> The Committee expects that this amendment will terminate the uncertainty which currently exists due to continuing litigation over who is the prevailing party in condemnation actions. The committee also hopes that the amendment will result in bringing the government and the property owner closer together in their land valuations, since they would both have the extra incentive of being determined the prevailing party under the Equal Access to Justice Act.

*Id.*

Under the definition set out in § 2412(d)(2)(H), appellants must meet two requirements to qualify as the "prevailing party." First, they must have obtained the judgment. They did obtain the judgment, *see* Aplt. App., Vol. 2, at 410, so they have met the first requirement. The second requirement, however, is that

their highest valuation of the property "attested to at trial" must be at least as close to the judgment they obtained as the government's highest valuation "attested to at trial[.]" *See* § 2412(d)(2)(H).

The district court held that its $3.8 million judgment in favor of appellants was closer to the highest valuation testified to by the government's expert, $186,500, than to the highest valuation testified to by appellants' expert, $33 million, leading to the court's conclusion that appellants were not the prevailing party and were not entitled to attorney's fees under EAJA. Aplt. App., Vol. 2, at 426-29. On appeal, appellants do not seriously dispute that the highest valuation in their expert's testimony was $30.6 million at the first hearing and $33 million at the second hearing. They argue, rather, that they should not be bound by the highest valuations in the evidence they presented at trial because they moved to adopt the $6.1 million valuation proposed by the special commission the parties had agreed to appoint under Fed. R. Civ. P. 71.1(h) for the very purpose of determining the value of their property. Understanding appellants' arguments requires a review of the procedural history, which follows.

## II. Procedural History

Appellants formerly owned an undivided 12.5% mineral interest in land formerly called the Baca Ranch in the volcanic Jemez Mountains in New Mexico.[1] The original owners bought the land as a speculative investment in its potential for geothermal development, but there was also some value in its hard rock minerals. Geothermal energy development was attempted, but it was not successful, and the original owners apparently did not get along well. In 2000, the government purchased, from owners other than the appellants, the surface estate of the Baca Ranch and 87.5% of the mineral estate to create a national preserve. Appellants refused the government's December 2001 offer of $1.875 million for their undivided 12.5% mineral interest. *See* Aplt. App., Vol. 1, at 53, 123. (The district court later noted that, by extrapolation, the government's payment for the land and the other 87.5% of the mineral estate valued the remaining 12.5% mineral estate at $2.273 million. *Id.*, Vol. 2, at 374 n.7.)

---

[1] To be specific, there were two parcels of land and two separate mineral interests. They were adjudicated together, however, and one of the mineral interests was determined to have negligible value. *See, e.g.*, Aplt. App., Vol. 2, at 403-05 (showing the district court's determination of fair market value for the Baca Ranch mineral interest as $3.8 million and the Bandelier mineral interest as $968). For the purposes of this opinion, we refer to both interests as one, and have rounded most of the numerical values to millions.

By stipulation of the parties, the government took appellants' 12.5% mineral interest on May 21, 2006. *Id.* at 377. In October 2006, the government initiated this eminent domain proceeding to determine how much it would be required to pay appellants as just compensation for the taking. *See id.*, Vol. 1, at 34. The government attached documentary evidence to its complaint stating that appellants' mineral interest was worth $700,000, and the government deposited that amount with the district court. *See id.* at 44, 50. Appellants did not file an answer; rather, the magistrate judge filed an initial scheduling order setting a hearing for the parties to discuss the possibility of settlement and to begin discovery. R., D.C. No. 06-0933 RB/RHS, Doc. 15.

Unable to reach a settlement during discovery, the parties agreed pursuant to Rule 71.1(h) in June 2008 for the district court to appoint a three-member commission to determine the value of appellants' undivided 12.5% mineral interest. The Commission received evidence and heard testimony from the parties' experts at a hearing in March 2009. The government's expert, John Widdoss, testified that appellants' 12.5% mineral interest was worth only $186,500. *See* Aplt. App., Vol. 2, at 377-78 & n.10. Appellants' expert, Dr. Mitchell E. Albert, testified that their mineral interest was worth a range of values up to approximately $30.6 million (counting the hard rock mineral value as well as the geothermal value of both mineral estates). *Id.* at 380-81, 400; *see also* Aplee. Br. at 22-23.

The Commission decided based upon the evidence presented at trial that the value of appellants' undivided 12.5% mineral interest was $6.1 million. Appellants moved the district court to adopt that valuation, but the government objected to it, suggesting that evidence of comparable sales presented to the Commission would support a modification of the assessed value to an amount between $200,000 and $3.8 million. Aplt. App., Vol. 2, at 257.

Before the district court considered the parties' motions concerning the Commission's valuation, appellants moved the district court for sanctions against the government based on discovery abuse. *Id.* at 214. They asserted that during discovery, the government had produced only the 2001 "Halmbacher Appraisal," *see id.* at 216-17, which valued appellants' mineral interest at $1.875 million, *see id.* at 384. Four days before the March 2009 trial before the Commission, however, the government had disclosed the existence of the 2000 "Van Court Supplemental Appraisal," which appraised a portion of the Baca Ranch and was therefore covered by a discovery order entered by the magistrate judge on September 26, 2007. *See id.* at 384, 405. This was appellants' second motion for sanctions (the first motion was denied), and they argued that the government's conduct in failing to disclose the Van Court Supplemental Appraisal until "almost two years" after the government was ordered to produce all of the appraisals was "inexcusable[.]" *Id.* at 214.

Appellants asked that judgment be entered against the United States "in the amount of $30,310,785, as a sanction for its conduct in this matter" and that they be awarded their attorney's fees and costs. *Id.* at 222-23. The magistrate judge entered a Report and Recommendation recommending that the motion for sanctions be denied because appellants had not sought a continuance to consider the late-filed appraisal, and thereby waived the government's delay. R., D.C. No. 06-0933 RB/RHS, Doc. 190. Appellants filed objections to the recommendation. *Id.*, Doc. 197.

In response to appellants' motion for sanctions, the district court reopened discovery so that the parties' experts could update their appraisals to include the late-filed Van Court Supplemental Appraisal, and the court scheduled a hearing for October 13, 2009, to determine "[t]he issues of just compensation and the appropriateness of sanctions[.]" Aplt. App., Vol. 2, at 287. The court specified that the parties could provide a summary of "highest and best use of the mineral interests at issue in this case, an evidentiary-based assessment of fair market value, and any evidence of actual prejudice to the Defendants based on the untimely disclosure of an appraisal by the United States." *Id.* at 288. Appellants were instructed, however, that they could "only . . . address the issue of just compensation on rebuttal." *Id.*[2]

---

[2]      The district court's order may have been ambiguous. The court might have

(continued...)

At the October 13 hearing, the government's expert, Mr. Widdoss, once again testified that appellants' mineral interest was worth only $186,500. *Id.* at 298, 427. In argument, the government's counsel contended that the value was at most $3.8 million based on comparable sales. *Id.* at 322 (tr. at 130-31). Appellants again offered the testimony of Dr. Albert, who said that if he had had the government's late-filed appraisal in a timely manner, he would have increased his estimation of the value of appellants' mineral interest to a range as high as approximately $33 million. *See id.* at 291 (tr. at 8 ln. 15-18, 9 ln. 11-14), 427.

In their brief on appeal, appellants claim to have again adopted the Commission's $6.1 million valuation during their rebuttal argument at the October 13 hearing, in spite of the evidence they had just put on that their property was worth as much as $33 million. *See* Aplt. Opening Br. at 13. There are two somewhat vague references in the hearing transcript relevant to this assertion. *See generally* Aplt. App., Vol. 2, at 289-327. At the close of appellants' opening argument, which is the cite appellants provide in their opening brief on appeal, appellants' counsel objected to the government's

_____

[2](...continued)
meant that appellants' rebuttal was limited to the issue of just compensation, or, alternatively, it might have meant that appellants were not allowed to address the issue of just compensation until rebuttal. Appellants interpreted the order to mean that they were not permitted to address the issue of just compensation until rebuttal. They have not argued that the district court's order was ambiguous, however, which results in a waiver of such an argument on appeal.

-11-

argument that there had been no *testimony* that their property was worth

$6.1 million, as the Commission had determined.  *Id.* at 306 (tr. at 66).

Appellants' counsel said:

> First of all, I think, from a trying-a-damages-case perspective,
> they're taking an absurd position to argue that there's no evidence
> for the $6.1 million, of the Commission's position, because nobody
> testified to $6.1 million.  Nobody testified to less than 6 megawatts
> per well.  Your Honor, this is a damages case.  We put on our
> damages case.  We didn't say, It's this or nothing.  It's 6.1.

*Id.* (tr. at 66 ln. 14-21).  In addition, during his rebuttal argument, appellants'

counsel said that appellants were "very gratified – even though they thought it

was too low, they're very gratified to get the Commission's ruling.  They've been

waiting a long time."  *Id.* at 326 (tr. at 149 ln. 12-15).  As explained below, we

find it unnecessary to decide whether appellants "readopted" the Commission's

$6.1 million valuation at the October 13, 2009, hearing.

In its Memorandum Opinion and Order entered on December 14, 2009, the

district court considered both the parties' motions concerning the Commission's

valuation of the property and appellants' motion for sanctions.  *See id.*

at 366-409.  Upon de novo review, the court determined that the value of

appellants' undivided 12.5% mineral interest was $3.8 million.  *Id.* at 403-05.

The court rejected the Commission's $6.1 million valuation (and appellants'

motion to adopt it) because the members did not set out the path they followed to

reach their valuation.  *Id.* at 389.  The court based its valuation on evidence of

comparable sales, adjusted for inflation, for the highest and best use of the mineral interest at the time of the taking in May 2006, which the court determined was to continue to hold it as a speculative investment until technological advancements would make development of the geothermal properties economically feasible. *See id.* at 398-405. The court granted appellants' motion for sanctions, rejecting the magistrate judge's recommendation. *Id.* at 405. The court awarded appellants attorney's fees of $50,000, much less than they had requested. *Id.* at 407-08. The court then entered judgment in favor of appellants. *Id.* at 410.

### III. Appellants' Motion for Attorney's Fees under EAJA

Having won the judgment, appellants moved for attorney's fees and costs under EAJA, arguing that they were the prevailing party under § 2412(d)(2)(H), and asserting that "their" valuation of $6.1 million was closer to the district court's $3.8 million judgment than the government's $186,500 valuation. *See* Aplt. App., Vol. 2, at 412. Appellants further argued that the government's litigation position was not substantially justified because the government had previously valued the property variously at $2.2 million (by the district court's extrapolation from the government's actual purchase price of the other 87.5% mineral interest), at $1.875 million (in the Halmbacher Appraisal and the

government's actual December 2001 purchase offer to defendants), and at $700,000 (in a valuation attached to the government's complaint). *Id.* at 413.

Appellants asserted in their motion for attorney's fees that they had put on evidence that the value of their geothermal property was either $4.5 million or $8.9 million, and that the value of their non-geothermal property (that is, hard rock minerals) was nearly $1 million. *See id.* at 414. They did not mention that their expert, Dr. Albert, had testified that their property was worth as much as $30.6 million (at the hearing before the Commission) or as much as $33 million (at the hearing before the district court on their motion for sanctions). *See id.* Instead, they stated that the Commission had concluded that the value of their mineral interest was $6.1 million, and they then performed the mathematical comparison set out in § 2412(d)(2)(H) as if $6.1 million was their highest valuation of their mineral interest attested to at trial. *See* Aplt. App., Vol. 2, at 414-15. They stated that "[f]ollowing the Special Commission's award of $6.1 million, Defendants adopted the Special Commission's award and filed their Motion to Adopt the Special Commission's Report." *Id.* at 415. They also noted that "[s]eparate and apart from [their] Motion to Adopt the Special Commission's Report, [they] proffered the testimony of Dr. Mitch Albert on October 13, 2009 regarding damages suffered by Defendants in connection with the United States' untimely disclosure of the Van Court Supplemental Appraisal." *Id.* n.1. They did not mention that the prejudice they claimed to have suffered was that their expert,

Dr. Albert, would have testified based on the Van Court Supplemental Appraisal that their property was worth up to $33 million, even more than the $30.6 million value he had testified to at the hearing before the Commission. *See id.*

As noted above, the district court denied appellants' motion for attorney's fees, holding that its $3.8 million judgment in favor of appellants was closer to the highest valuation testified to by the government's expert, $186,500, than to the highest valuation testified to by appellants' expert, $33 million, and that appellants therefore were not the prevailing party under § 2412(d)(2)(H). Aplt. App., Vol. 2, at 426-29.

## IV. Standards of Review and Issues on Appeal

This court reviews the denial of an award of attorney's fees under EAJA for abuse of discretion. *United States v. 2,116 Boxes of Boned Beef*, 726 F.2d 1481, 1486 (10th Cir. 1984). "Under this standard of review, the district court's conclusions of law are reviewable on a *de novo* basis, and its findings of fact are to be reversed only if clearly erroneous." *Id.* (citation omitted) (internal quotation marks omitted).

Appellants do not dispute what happened in the district court, but, rather, the legal significance of what happened. They raise two issues on appeal. First, they argue that the district court erred in holding that they offered valuation testimony at the hearing on their sanctions motion because the district court's

-15-

scheduling order limited their testimony to establishing prejudice arising from the government's untimely disclosure of the Van Court Supplemental Appraisal. This argument is contradicted by the court's order, however, which informed the parties that a hearing was being scheduled in order for the court to determine "[t]he issues of just compensation and the appropriateness of sanctions[.]" Aplt. App., Vol. 2, at 287. Further, if the district court was conducting a trial de novo at the October 13 hearing, as appellants argue, *see* Aplt. Opening Br. at 19-21, then the court necessarily would have heard testimony on the value of the property. The issue of just compensation was before the court because, although appellants had not objected to the Commission's valuation of their mineral interest, the government had objected to it. *See* Aplt. App., Vol. 2, at 257. Moreover, appellants' approach to proving that they were prejudiced by the government's untimely disclosure of the Van Court Supplemental Appraisal was to put their expert on the stand to testify that it would have increased his estimate of the value of their property. *See id.* at 427.

Second, appellants argue that the district court erred in holding that the government's $186,500 value was closer to the $3.8 million judgment than their valuation because they had "attested to" the Commission's $6.1 valuation by moving to adopt it, and $6.1 million is therefore the value the district court should have used for their part of the comparison required by § 2412(d)(2)H). We disagree.

-16-

We note that if defendants were entitled to rely on the Commission's $6.1 valuation as their highest valuation of the property "attested to at trial[,]" then they would be correct that their valuation would be closer to the district court's $3.8 million judgment than the government's valuation. *See* § 2412(d)(2)(H). $3.8 million minus $186,500 equals $3,613,500. $6.1 million minus $3.8 million equals $2.3 million, so the Commission's valuation is closer to the final judgment than the government's highest valuation. For appellants' valuation to be farther from the judgment than the government's valuation, it would have to be no less than $3.8 million plus $3,613,500, which equals $7,413,500. As a result, if appellants' highest valuation "attested to at trial" was more than approximately $7.4 million, then they cannot be prevailing parties under the plain language of § 2412(d)(2)(H).

The question before us in this appeal is whether appellants are entitled to rely on the Commission's $6.1 million valuation as their highest "attested to" valuation for purposes of "prevailing party" status under § 2412(d)(2)(H). Appellants frame their arguments challenging the district court's conclusion on their fee motion as if they are challenging factual findings reviewed for clear error. *See* Aplt. Opening Br. at 21 ("[T]he district court's finding that $33,000,000 was the highest valuation offered on behalf of Appellants was clearly erroneous."), 23 ("By ignoring the Appellants['] explicit adoption of the Commission's value, the district court's reasoning that Appellants were not the

-17-

prevailing party is actually contrary to the stated legislative intent the court relied on, indicating that the district court's conclusion is clearly erroneous."). However, we believe that their issue implicates the proper interpretation of the phrase "attested to" in § 2412(d)(2)(H) and, therefore, presents a legal question reviewed de novo. *Fruitt v. Astrue*, 604 F.3d 1217, 1220 (10th Cir. 2010) ("To the extent that the district court's order involves statutory construction, we review it de novo."). Unfortunately, appellants' arguments do not address how to properly interpret § 2412(d)(2)(H) under Tenth Circuit law.

## V. Tenth Circuit Precedent

We have previously issued two opinions discussing issues arising under § 2412(d)(2)(H), and these decisions foreclose appellants' arguments on appeal in this case.

In *United States v. Charles Gyurman Land & Cattle Co.*, 836 F.2d 480 (10th Cir. 1987), neither the district court's application of the definition for "prevailing party" in § 2412(d)(2)(H) (which was under consideration at the time of the district court's ruling, but which had not yet been enacted by Congress), nor the district court's determination that the landowner was the prevailing party under § 2412(d)(2)(H) was challenged on appeal. *Charles Gyurman Land & Cattle Co.*, 836 F.2d at 482. The issue, rather, was "[t]he proper test for determining whether the government's position is substantially justified[.]" *Id.*

In the process of developing a test for substantial justification, we stated that "[t]he EAJA is a waiver of sovereign immunity and it therefore must be strictly construed" when the court considers "under what circumstances Congress was willing to require the government to pay the attorney's fees of other parties" under the "mathematical prevailing party standard" set out in § 2412(d)(2)(H). *Charles Gyurman Land & Cattle Co.*, 836 F.2d at 481, 483.

Our holding that EAJA must be strictly construed is a constraint on appellants' arguments in this case, although they have not acknowledged it. The plain language of § 2412(d)(2)(H) expressly requires the district court to use the highest valuation in their evidence for the mathematical comparison. We do not believe that the phrase "attested to at trial" is ambiguous, but even if it is, the legislative history makes clear that "[t]his amendment applies only to values testified to in court." *See* H.R. Rep. 99-120, at 18, 1985 U.S.C.C.A.N. 132, at 147 ("all caps" style omitted). The government advances this same argument directly from the legislative history, rather than from our holding in *Charles Gyurman Land & Cattle Co. See* Aplee. Br. at 20.

A strict construction of § 2412(d)(2)(H) leaves no room for appellants' argument that the district court should have used the Commission's $6.1 million as their highest "attested to" valuation because they moved to adopt it, despite the fact that their expert's testimony valued their property as high as $30.6 million at the trial before the Commission and as high as $33 million at the hearing before

-19-

the district court. And even if we were to accept appellants' argument that they should not be bound by the valuation testimony they put on at the October 13 hearing to prove prejudice arising from the government's untimely disclosure of a relevant appraisal, the highest valuation in their testimony would still be $30.6 million, much more than the $7.4 million value at which they would lose "prevailing party" status, in light of the language of § 2412(d)(2)(H) and the government's highest "attested to" valuation in this case. *See, e.g.*, Aplee. Br. at 17, 22-23. The government asserts that appellants have waived any argument that the $30.6 million value was not obtained "at trial[,]" as required by § 2412(d)(2)(H), by failing to present it in their opening brief. *See id.* at 15, 23. We agree.

We also addressed § 2412(d)(2)(H) in *United States v. 1002.35 Acres of Land*, 942 F.2d 733 (10th Cir. 1991). In that case, we considered whether the new definition for "prevailing party" enacted in 1985 should apply to eminent domain proceedings initiated in 1979. *See 1002.35 Acres of Land*, 942 F.2d at 734-35. The district court had adopted the magistrate judge's decision to apply an earlier definition for "prevailing party" adopted by the Fifth Circuit, "under which a landowner is considered the prevailing party for EAJA purposes if he succeeds in recovering far more than the government had offered or admitted liability for in a condemnation case." *Id.* at 735 (quotation marks omitted). The magistrate judge had acknowledged that § 2412(d)(2)(H) called for a comparison

of the highest valuations in the parties' evidence to the judgment obtained, and that the landowners would not be the prevailing party if the new definition applied. *See id.*

We reversed on the ground that the new definition set forth in § 2412(d)(2)(H) applied. *1002.35 Acres of Land*, 942 F.2d at 736-37. We reasoned that "[w]here . . . Congress *expressly provides*, as it did in the 1985 [EAJA] Amendments, that a statute shall apply to cases pending on or commenced on or after the date of the enactment, courts have no choice but to follow its dictates." *Id.* at 736 (emphasis added). We explained that "[c]ourts are not at liberty to create exceptions to the application of a statute when Congress expressly directs its application[,]" and that "courts can proceed by assuming that Congress authorizes them to prevent manifest injustice" only "[i]n instances where Congress is silent or the statute is ambiguous[.]" *Id.*

Our holdings in *1002.35 Acres of Land* are also constraints on appellants' arguments in this case, although they do not acknowledge these holdings. The plain language of § 2412(d)(2)(H) requires a district court to use the "highest valuation of the property involved that is attested to at trial on behalf of the property owner[.]" That leads to a result in this case—that appellants are not the prevailing party—that may seem manifestly unjust for two reasons. First, appellants obtained a judgment more than twice as high as the amount the government had offered them for their mineral interest before litigation began.

-21-

And, second, the government repeatedly lowered its estimate of the value of the property until the Commission determined that the value was $6.1 million, and then the government increased its valuation to $3.8 million on the basis of comparable sales data, even though the government's original purchase offer to appellants was less than half as much as $3.8 million. Under *1002.35 Acres of Land*, 942 F.2d at 736, however, we are bound to apply the plain language of § 2412(d)(2)(H), and we conclude that appellants are not the prevailing party.

Appellants' argument that this court should allow them to use the Commission's $6.1 million valuation as their "attested to" valuation because it would effectuate congressional intent to bring the parties' valuations closer together is based on a selective reading of the legislative history. *See* Aplt. Opening Br. at 23. Congress plainly indicated in the statute that a landowner could not become a prevailing party in eminent domain proceedings based on a compromise valuation. *See* § 2412(d)(2)(H). Appellants' argument that a legal dictionary's broad definition of "attest" would include their motion to adopt the Commission's valuation ignores our precedent establishing how to interpret EAJA. *See* Aplt. Opening Br. at 22; Aplt. Reply Br. at 7. In addition, the government correctly argues that both a regular dictionary and a legal dictionary define "attest" to mean "testify," and the word "does not encompass the act of filing a motion or making legal arguments." Aplee. Br. at 18. We conclude that appellants' argument based on an asserted dictionary definition is without merit.

And, in any event, $6.1 million could not be termed appellants' *highest* valuation, which the district court was required by the plain language of the statute to use. *See* § 2412(d)(2)(H).

In this case, the district court cited *1002.35 Acres of Land* for the legal standard to be applied to the "prevailing party" determination, and the court cited the House Report as support for the limitation that "the only relevant values are those values testified to in court." Aplt. App., Vol. 2, at 428. The court did not cite *Charles Gyurman Land & Cattle Co.* or make any specific reference to the requirement that EAJA be strictly construed. That proposition is well-settled in Tenth Circuit law, however. *See, e.g.*, *Sloan v. Pugh*, 351 F.3d 1319, 1322 (10th Cir. 2003); *In re Estate of Smith v. O'Halloran*, 930 F.2d 1496, 1501 (10th Cir. 1991).

Appellants argue that we should resolve the tension created by § 2412(d)(2)(H)—acknowledged by the district court—that the landowner is caught between an incentive to present testimony of the highest possible value of his property, while being compelled by the definition of "prevailing party" to keep his valuation testimony lower. Aplt. Opening Br. at 23-24. We believe that *1002.35 Acres of Land* has already answered this question, however, because we held that if Congress' language is clear, we must apply it even if it results in manifest injustice. 942 F.2d at 736-37.

Appellants also suggest that they should be deemed the prevailing party because they "received a judgment more tha[n] twenty times higher than the Government's highest valuation offered in the case." Aplt. Opening Br. at 3. It is true that appellants obtained a judgment much higher than the $1.875 million the government had offered them, let alone the $186,500 value the government's expert testified to in this litigation. However, we considered and rejected in *1002.35 Acres of Land* an analysis comparing only what the government had offered the landowner to what the landowner obtained in the judgment. *See* 942 F.2d at 735-37. Section 2412(d)(2)(H) plainly calls for a comparison of both sides' highest valuation in the testimony with the district court's judgment.

Finally, in their reply brief, appellants argue that the doctrine of judicial estoppel should apply to protect them from their decision to move to adopt the Commission's $6.1 million valuation and, then, to contradict that position by putting on evidence that the value was much higher. *See* Aplt. Reply Br. at 11. This argument is without merit for two reasons. First, arguments raised for the first time in a reply brief are generally deemed waived. *Wheeler v. Comm'r*, 521 F.3d 1289, 1291 (10th Cir. 2008). In addition, the doctrine of judicial estoppel is an affirmative defense. *Hansen v. Harper Excavating, Inc.*, No. 08-4089, 2011 WL 1379821, at *9 (10th Cir. Apr. 13, 2011). Appellants

have not explained how they can use the doctrine of judicial estoppel to save them from their own change in position.

## VI.  Conclusion

The district court's judgment is AFFIRMED.